**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THOMAS MASSIE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NANCY PELOSI, *et al.*, <br><br> *Defendants*. | Case No. 1:21-cv-02023-RBW |

**MOTION TO DISMISS OF DEFENDANTS NANCY PELOSI, WILLIAM J. WALKER, AND CATHERINE SZPINDOR**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Nancy Pelosi, William J. Walker, and Catherine Szpindor respectfully move for an order dismissing Plaintiffs' Complaint (July 27, 2021) (ECF No. 1).  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the Complaint should be dismissed with prejudice.

A proposed order is attached.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants Nancy Pelosi, William J. Walker, and Catherine Szpindor*

September 28, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2021, I caused the foregoing Motion to Dismiss of Defendants Nancy Pelosi, William J. Walker, and Catherine Szpindor and the accompanying Memorandum of Points and Authorities in Support to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THOMAS MASSIE, *et al.*,

                         *Plaintiffs*,

           v.                                 Case No. 1:21-cv-02023-RBW

NANCY PELOSI, *et al.*,

                         *Defendants*.

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT ......................................................................................................... 3

I.   The House's Constitutional Authority To Govern Itself ........................................ 3

II.  COVID-19 And House Resolution 38 ................................................................. 3

III. Member Compensation ..................................................................................... 8

IV. Procedural History ............................................................................................ 9

ARGUMENT ........................................................................................................ 10

STANDARD OF REVIEW ................................................................................... 10

I.   The Speech Or Debate Clause Bars Plaintiffs' Suit ............................................ 11

II.  Plaintiffs Fail To State A Claim ....................................................................... 15

      A.  The Rule Does Not Violate The Twenty-Seventh Amendment .............................. 15

      B.  The Rule Does Not Violate Section 5 Of Article I Of The Constitution .................. 22

      C.  The Rule Does Not Violate Section 6 Or 7 Of Article I Of The Constitution ........... 24

      D.  The Rule Does Not Violate The First Amendment  ........................................... 25

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 663 (2009) ........................................................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 10, 11

*Boehner v. Anderson,*
  809 F. Supp. 138 (D.D.C. 1992) ....................................................................... 19

\* *Boehner v. Anderson,*
  30 F.3d 156 (D.C. Cir. 1994) ................................................................... 18, 19, 20

*City of Dallas v. Stanglin,*
  490 U.S. 19 (1989) ............................................................................................ 27

*City of Erie v. Pap's A.M.,*
  529 U.S. 277 (2000) .......................................................................................... 28

\* *Consumers Union of U.S. v. Periodical Correspondents' Ass'n,*
  515 F.2d 1341 (D.C. Cir. 1975) ............................................................... 11, 13, 14

*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) .......................................................................................... 12

*Grand Lodge of the Fraternal Order of Police v. Ashcroft,*
  185 F. Supp. 2d 9 (D.D.C. 2001) ....................................................................... 10

\* *Gravel v. United States,*
  408 U.S. 606 (1972) ............................................................................... 12, 13, 15

*Humphrey v. Baker,*
  848 F.2d 211 (D.C. Cir. 1988) ........................................................................... 19

*In re Grand Jury Subpoenas,*
  571 F.3d 1200 (D.C. Cir. 2009) ......................................................................... 22

*Kilbourn v. Thompson,*
  103 U.S. 168 (1880) .......................................................................................... 23

*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ........................................................................... 11

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................................... 10

\*     *McCarthy v. Pelosi,*
      5 F.4th 34 (D.C. Cir. 2021) .................................................................11, 12, 14, 15

*Miller v. D.C.,*
      319 F. Supp. 3d 308 (D.D.C. 2018) ..........................................................................11

*Minnesota Voters Alliance v. Walz,*
      492 F. Supp. 3d 822 (D. Minn. 2020) ........................................................................28

*Nevada Comm'n on Ethics v. Carrigan,*
      564 U.S. 117 (2011) ...................................................................................................28

*Papasan v. Allain,*
      478 U.S. 265 (1986) ...................................................................................................11

\*     *Rangel v. Boehner,*
      785 F.3d 19 (D.C. Cir. 2015) ...............................................................................12, 13

\*     *Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.,*
      547 U.S. 47 (2006) ..............................................................................................26, 27

*Shaffer v. Clinton,*
      54 F. Supp. 2d 1014 (D. Colo. 1999) ........................................................................19

*Schaffer v. Clinton,*
      240 F.3d 878 (10th Cir. 2001) ..................................................................................19

\*     *Texas v. Johnson,*
      491 U.S. 397 (1989) .............................................................................................27, 28

*United States v. Ballin,*
      144 U.S. 1 (1892) .........................................................................................................3

\*     *United States v. O'Brien,*
      391 U.S. 367 (1968) .............................................................................................26, 29

*West Virginia Bd. of Educ. v. Barnette,*
      319 U.S. 624 (1943) ...................................................................................................26

*Youkelsone v. F.D.I.C.,*
      910 F. Supp. 2d 213 (D.D.C. 2012) ..........................................................................11

## Constitution and Statutes

U.S. Const., Art. I, § 1 ...............................................................................................3

U.S. Const., Art. I, § 5, cl. 2..............................................................................3, 13, 22

U.S. Const., Art. I, § 6, cl. 1...........................................................................8, 11, 15, 24

U.S. Const., Art. I, § 7, cl. 2 .................................................................................................18, 25

U.S. Const., Amend XXVII ............................................................................................................15

2 U.S.C. § 4501 ................................................................................................................................8

2 U.S.C. § 4523 .......................................................................................................................17, 21

2 U.S.C. § 5301 ................................................................................................................................9

5 U.S.C. § 5520a ...........................................................................................................................21

**Legislative Authorities**

1 Annals of Cong. 440 (Joseph Gales, ed. 1834) .........................................................................20

163 Cong. Rec. H7 (daily ed. Jan. 3, 2017) .................................................................................22

163 Cong. Rec. H26 (daily ed. Jan. 3, 2017) ...............................................................................22

166 Cong. Rec. H3965 (daily ed. July 29, 2020) ...........................................................................6

166 Cong. Rec. H5875 (daily ed. Nov. 18, 2020) ..........................................................................6

166 Cong. Rec. H7158 (daily ed. Dec. 15, 2020) ...........................................................................6

167 Cong. Rec. H19 (daily ed. Jan. 4, 2021) ..................................................................................6

167 Cong. Rec. H40-H41 (daily ed. Jan. 4, 2021) .........................................................................6

167 Cong. Rec. H274-H75 (daily ed. Feb. 2, 2021) .......................................................................6

167 Cong. Rec. H2157 (daily ed. May 11, 2021) ...........................................................................7

H. Res. 5, 115th Cong. (2017) ......................................................................................................22

H. Res. 8, 117th Cong. (2021) ........................................................................................................7

H. Res. 38, 117th Cong. (2021) .............................................................................................6, 7, 17

H. Res. 965, 116th Cong. (2020) ....................................................................................................6

Hinds' Precedents of the House of Representatives (1907) ...........................................................23

Rev. Stat. 40 (Aug. 16, 1856) .......................................................................................................23

Rules of the House of Representatives, 117th Cong. (2021)

    House Rule II.3(g) ...............................................................................................................7, 17

House Rule II.4(d)(1)............................................................................................7

**Other Authorities**

2 The Records of the Federal Convention of 1787 (Max Farrand ed., 1911)................................16

A Dictionary of the English Language, Samuel Johnson (1785)....................................................17

American Dictionary of the English Language, Noah Webster (1828).........................................23

Barry Moore (@RepBarryMoore), Twitter (Aug. 20, 2021, 5:42 PM),
    https://perma.cc/3JZ6-FL27 ......................................................................................8

Black's Law Dictionary (11th ed. 2019)...............................................................................16, 17

Bob Latta (@boblatta), Twitter (Sept. 20, 2021, 6:34 PM),
    https://perma.cc/4J5U-XEQL ....................................................................................8

Brian Babin (@RepBrianBabin), Twitter (Sept. 25, 2021, 1:06 PM)
    https://perma.cc/U2WA-3BRG....................................................................................8

Brian P. Monahan, Attending Physician Pandemic Social Distancing and Daily
    Health Screening Implementation Guidelines for Congressional Offices and
    Work Centers, Version 6 (June 11, 2021)...................................................................7

Brian P. Monahan, Congressional Coronavirus Disease Update; Centers for
    Disease Control Mask Wear Recommendations for Interior Spaces (July 27,
    2021) .......................................................................................................................7

Buchanan Tests Positive for COVID-19 (July 19, 2021)
    https://perma.cc/6TS4-YBJB .....................................................................................8

Centers for Disease Control and Prevention (CDC), COVID Data Tracker,
    https://perma.cc/SE47-3JXX .....................................................................................3

Centers for Disease Control and Prevention (CDC), Frequently Asked Questions
    (updated Sept. 13, 2021), https://perma.cc/SK9M-WPWW......................................4

Centers for Disease Control and Prevention (CDC), When You've Been Fully
    Vaccinated (updated Sept. 16, 2021), https://perma.cc/47NG-NGT3 ......................4

Centers for Disease Control and Prevention (CDC), Your Guide to Masks
    (updated Aug. 13, 2021), https://perma.cc/X73N-DPDQ.........................................4

Chris Marquette, *Front-line Workers in Capitol Keep Getting COVID-19*, Roll
    Call (Nov. 19, 2020) ................................................................................................4

Comm. on Ethics, *In the Matter of Allegations Related to Representative
    David Schweikert*, H. Rep. 116-465 (July 30, 2020) ...............................................24

Cong. Rsch. Serv., CRS Report 97-1011, Salaries of Members of Congress:
Recent Actions and Historical Tables (2021) ...................................................8, 9

Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Fine:
Legislative Discipline in the House of Representatives (2016)..............................24

Congressman Tim Ryan Tests Positive for COVID-19 (Sept. 20, 2021),
https://perma.cc/27QA-3K55..................................................................................8

Darren Soto (@RepDarrenSoto), Twitter (Sept. 8, 2021, 9:51 AM),
https://perma.cc/D5QG-RYWG...............................................................................8

Davids Statement on COVID Diagnosis (Aug. 6, 2021)
https://perma.cc/Z2GE-MW2J.................................................................................8

Dennis Romboy, *What's on a Mask?  Politicians Send Messages with Face
Coverings*, Deseret News, Mar. 10, 2021 ...................................................................

GianCarlo Canaparo & Paul J. Larkin, Jr., The Twenty-Seventh Amendment:
Meaning and Application, Harvard Journal of Law & Public Policy,
Sept. 2, 2021 ..................................................................................................19, 20

Hickenlooper Statement on Positive COVID-19 Test (Aug. 19, 2021)
https://perma.cc/C7N6-T3DR..................................................................................8

*In Re: Reinstatement of Mask Requirement for All Individuals in Public and Non-
Public Areas of Courthouse*, Standing Order No. 21-45 (July 30, 2021)................26

Joe Morelle (@RepJoeMorelle), Twitter (Sept. 12, 2021, 12:17 PM),
https://perma.cc/Y65M-WEQ2................................................................................8

Jonathan Weisman, N.Y. Times, *Rep. Clay Higgins, a Staunch Opponent of Mask
Mandates, Announces He and His Family Have Covid-19* (July 26, 2021)..............8

Josh Chafetz, Democracy's Privileged Few (2007)......................................................23

Kelly Armstrong (@RepArmstrongND), Twitter (Sept. 26, 2021, 11:01 AM),
https://perma.cc/YY65-G6YZ .................................................................................8

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (July 20,
2021) (Rep. Greene)..................................................................................................9

Letter from Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (July 20,
2021) (Rep. Norman) ...............................................................................................9

Lindsey Graham (@Lindsey Graham), Twitter (Aug. 2, 2021, 3:03 PM)
https://perma.cc/P5PM-DAWX................................................................................8

Memorandum from Brian P. Monahan, *Attending Physician Pandemic Social Distancing and Daily Health Screening Implementation Guidelines for Congressional Offices and Work Centers VERSION 2.0* (June 16, 2020)............................5, 6

Memorandum from Paul D. Irving, *Coronavirus (COVID-19) Guidance for House Offices* (Feb. 28, 2020) .................................................................................5

Memorandum from Paul D. Irving and Brian P. Monahan, *Procedures for the House Session on Thursday, April 23, 2020* (Apr. 22, 2020) ....................................5

Memorandum from Paul D. Irving and Brian P. Monahan, *Procedures for the House Session on Wednesday, May 27 and Thursday, May 28, 2020* (May. 26, 2020) ...........................................................................................................................5

Memorandum from Paul D. Irving and Brian P. Monahan, *Use of Face Covers in the House Office Buildings* (July 29, 2020) ...................................................................6

Memorandum from Philip G. Kiko and Paul D. Irving, *Availability of Hand Sanitizer and Face Coverings for Member and Committee Offices* (Apr. 21, 2020)....................................................................................................................5

Mike Doyle (@USRepMikeDoyle), Twitter (Aug. 25, 2021, 7:48 PM) https://perma.cc/Z3AF-ZD58.....................................................................................8

Oxford English Dictionary (2d ed. 1989) ...........................................................................16

Paulina Firozi and David Weigel, *Rep. Ron Wright Has Died After Battle with Covid-19*, Wash. Post, Feb. 8, 2021...........................................................................2

Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497 (1992) ...............................15, 16, 20

Statement from Rep. Ralph Norman on COVID-19 Test Results (Aug. 5, 2021) https://perma.cc/XN56-W4AB ..................................................................................8

Senator King Announces Positive Test for Coronavirus (Aug. 19, 2021) https://perma.cc/7TVM-SUH5....................................................................................8

Tal Axelrod, *Staffer for Florida Congressman Dies from COVID-19*, The Hill, July 25, 2020.............................................................................................................2

Tim Elfrink, *Luke Letlow, GOP Congressman-elect from Louisiana, Dies of Covid-19*, Wash. Post, Dec. 30, 2020. ....................................................................2

The Documentary Record from the First Federal Congress (Helen E. Veit et al., eds., 1991) ...............................................................................21

Thomas Massie (@RepThomasMassie), Twitter (Jan. 31, 2021, 8:33 PM), https://perma.cc/QWA4-D69P..................................................................................29

Thomas Massie (@RepThomasMassie), Twitter (Apr. 20, 2021, 4:32 PM)
  https://perma.cc/KNV8-VETW ....................................................................................29

Troy Nehls (@RepTroyNehls), Twitter (Aug. 21, 2021, 12:18 PM),
  https://perma.cc/AY64-8ETU......................................................................................8

United States Census Bureau, U.S. and World Population Clock,
  https://perma.cc/3Z2U-7N9V .....................................................................................1

Wicker Office Statement on COVID-19 Diagnosis (Aug. 19, 2021)
  https://perma.cc/P7AM-7XES .....................................................................................8

## INTRODUCTION

For over a year and a half, the Nation has been in the throes of a terrible epidemic that has caused suffering and death on a scale not seen in this country since the 1918 influenza pandemic.  The novel coronavirus known as COVID-19 has upended most aspects of American life.  Countless institutions have been forced to take dramatic measures to ensure continuity of operations while protecting the health of their employees and patrons.

The House of Representatives has not been immune: a Member and a Member-elect have died from this airborne virus.  As part of the House's efforts to protect the health of its Members and staff, and to ensure that the House will continue to be able to operate effectively in the midst of the pandemic, the Speaker of the House announced in July 2020 that Members would be required to wear masks while in the Hall of the House (sometimes referred to as the House Chamber), which is the sole room in which the House debates and votes as a full body. In January 2021, at a time when COVID-19 was killing over 3,000 Americans per day, the House adopted a Resolution authorizing the imposition of fines against House Members who refuse to wear a mask in the Hall of the House.

As we demonstrate in this brief, adoption of this Resolution lies squarely within the House's broad constitutional authority to make its own rules of proceeding and to discipline Members who violate those rules.  Nonetheless, the Plaintiff House Members—Reps. Thomas Massie, Marjorie Taylor Greene, and Ralph Norman—ask this Court to declare the implementation of the Resolution unconstitutional and to enjoin the House Sergeant at Arms and House Chief Administrative Officer from enforcing it.  The Court should reject those extraordinary requests and dismiss the complaint.

First and foremost, the complaint must be dismissed for lack of subject matter jurisdiction.  Plaintiffs' suit is barred by the Constitution's Speech or Debate Clause, which

provides absolute immunity from suit to Members, Officers, and Congressional aides for their actions taken as part of their legislative functions.  There can be no doubt that the challenged acts, all of which involve enforcement of a Resolution adopted pursuant to the House's constitutional powers to govern its own Chamber proceedings and to discipline its own Members, are legislative acts absolutely protected by the Clause.  This is particularly true here, where the Resolution at issue is designed to protect the health of Members and staff in the place where all full House debates and votes take place.

In addition, and alternatively, Plaintiffs' complaint must be dismissed because it fails to state a claim on which relief can be granted.  The complaint alleges that the challenged actions by the House Defendants violate the Twenty-Seventh Amendment (Count I); Article I, Section 5, Clause 2 (Count II); Article I, Section 6, Clause 1 and Article I, Section 7, Clause 2 (Count III); and the First Amendment (Count IV).  All of those claims fail as a matter of law. The Twenty-Seventh Amendment, by its plain terms and consistent with its history and purpose, does not apply here; Article I, Section 5, Clause 2 (the Discipline Clause) gives the House broad powers to punish its Members for violating internal House rules; Article I, Section 6, Clause 1 (the Ascertainment Clause) and Article I, Section 7, Clause 2 (the Presentment Clause) impose requirements not implicated here because Plaintiffs' "compensation for their services" has not been affected; and the First Amendment is not violated because the Resolution does not restrict or compel Plaintiffs' speech.

Because the suit is barred by the Speech or Debate Clause, and because in any event the complaint fails to state a claim, Plaintiffs' complaint must be dismissed.

## STATEMENT

### I.      The House's Constitutional Authority To Govern Itself

Article I of the Constitution vests all federal "legislative Powers … in a Congress of the United States, which shall consist of a Senate and House of Representatives."  U.S. Const., Art. I, § 1.  Those powers are "not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole."  *United States v. Ballin*, 144 U.S. 1, 7 (1892).

The Constitution grants the House and Senate each wide discretion to effectuate those provisions and to govern themselves.  The Rulemaking Clause empowers each house to "determine the Rules of its Proceedings," and the Discipline Clause authorizes each house to enforce those rules by "punish[ing] its Members for disorderly Behaviour."  U.S. Const., Art. I, § 5, cl. 2.  Absent a conflict with an express constitutional requirement or a violation of "fundamental rights," the rulemaking power of each house is plenary and beyond judicial review. *Ballin*, 144 U.S. at 5.

### II.     COVID-19 And House Resolution 38

1.      As of today, September 28, 2021, the novel coronavirus discovered in late 2019, commonly known as COVID-19, has killed over 689,000 Americans.[1]  More than 1 in 500 Americans have died from this disease.[2]  The death toll includes a House Member and a

---

[1]  Centers for Disease Control and Prevention, COVID Data Tracker, https://perma.cc/SE47-3JXX.

[2]  *See* United States Census Bureau, U.S. and World Population Clock, https://perma.cc/3Z2U-7N9V.

Member-elect: Rep. Ron Wright and Rep.-elect Luke Letlow.[3]  In addition, numerous

Congressional staff and U.S. Capitol Police officers have been sickened by the virus; at least one

staffer has died.[4]

2.      COVID-19 spreads "when an infected person breathes out droplets and very small

particles that contain the virus."[5]  Such droplets and particles "can be breathed in by other

people or land on their eyes, noses, or mouth."[6]  Accordingly, the CDC, since the early months

of the pandemic, has recommended that Americans cover their face with a mask in order to

reduce the chance of transmitting or contracting the COVID-19 virus.  Currently, the CDC

recommends that all persons aged 2 and older who are not fully vaccinated wear masks in indoor

public places, and that persons who are fully vaccinated wear a mask in indoor public places in

areas of substantial or high transmission.[7]

3.      Throughout the pandemic, the Attending Physician of the United States Congress,

Dr. Brian P. Monahan, has provided guidance on a wide range of issues relating to the protection

of Member and staff health.  On February 28, 2020, the Sergeant at Arms informed Members

and staff that the Attending Physician recommended that any person showing symptoms of

---

[3] Paulina Firozi & David Weigel, *Rep. Ron Wright Has Died After Battle with Covid-19*, Wash. Post (Feb. 8, 2021), https://perma.cc/U23B-M3MP; Tim Elfrink, *Luke Letlow, GOP Congressman-elect from Louisiana, Dies of Covid-19*, Wash. Post (Dec. 30, 2020), https://perma.cc/R6ZW-4XMK.

[4] *See, e.g.*, Tal Axelrod, *Staffer for Florida Congressman Dies from COVID-19*, The Hill (July 25, 2020), https://perma.cc/PK7E-38K5; Chris Marquette, *Front-line Workers in Capitol Keep Getting COVID-19*, Roll Call (Nov. 19, 2020), https://perma.cc/2M2W-JREZ.

[5] Centers for Disease Control and Prevention (CDC), Frequently Asked Questions (updated Sept. 13, 2021), https://perma.cc/SK9M-WPWW.

[6] *Id.*

[7] CDC, Your Guide to Masks (updated Aug. 13, 2021), https://perma.cc/X73N-DPDQ; CDC, When You've Been Fully Vaccinated (updated Sept. 16, 2021), https://perma.cc/47NG-NGT3.

COVID-19 wear a mask.[8]  On April 21, 2020, the Chief Administrative Office and the Sergeant

at Arms informed Members and staff that, in light of new CDC guidance, the Attending

Physician recommended that all Members and staff wear a face covering whenever it may not be

possible to maintain six feet of physical separation.[9]  The Sergeant at Arms and the Attending

Physician reiterated this guidance for the House Session on April 23 and again for sessions in

late May.[10]

4.      On June 16, 2020, the Attending Physician issued to Members and staff a detailed

guidance memorandum that included, among much else, requirements and recommendations for

face coverings.  The Attending Physician required the use of face coverings for any meetings in a

"limited enclosed space, such as a committee hearing room" for greater than 15 minutes, and

required that persons not wearing a face covering be denied entry absent a valid medical waiver

signed by the Office of the Attending Physician.  In addition, the Attending Physician strongly

recommended face coverings for any interactions longer than 15 minutes in any enclosed

Congressional building public space.[11]

---

[8] Memorandum from Paul D. Irving, *Coronavirus (COVID-19) Guidance for House Offices* (Feb. 28, 2020), at 2, https://perma.cc/6EFQ-42B2.

[9] Memorandum from Philip G. Kiko and Paul D. Irving, *Availability of Hand Sanitizer and Face Coverings for Member and Committee Offices* (Apr. 21, 2020), https://perma.cc/Y5NT-AURR.

[10] Memorandum from Paul D. Irving and Brian P. Monahan, *Procedures for the House Session on Thursday, April 23, 2020* (Apr. 22, 2020), https://perma.cc/22T7-CF85; Memorandum from Paul D. Irving and Brian P. Monahan, *Procedures for the House Session on Wednesday, May 27 and Thursday, May 28, 2020* (May 26, 2020), https://perma.cc/7LLJ-ENGA.

[11] Memorandum from Brian P. Monahan, *Attending Physician Pandemic Social Distancing and Daily Health Screening Implementation Guidelines for Congressional Offices and Work Centers VERSION 2.0* (June 16, 2020) §§ 3.2, 3.2.1, 3.2.2, https://perma.cc/PFB5-5AAF.  The memorandum noted that Congress has "unique risks" in that it is "an intra-National assembly of individuals traveling from areas of variable disease activity to assemble in

5.      On July 29, 2020, Speaker of the House Nancy Pelosi announced that all

Members and staff would be required to wear masks in the Hall of the House, except temporarily

when recognized by the Chair to speak, and that masks would be made available at entry points

for any Member who forgets to bring one.  166 Cong. Rec. H3965 (daily ed. July 29, 2020).[12]

The same day, the Sergeant at Arms and the Attending Physician announced that, with limited

exceptions, this requirement would also apply in House office buildings, "[u]pon the direction of

the Speaker of the House in consultation with our respective offices."[13]

6.      On December 15, 2020, the Speaker announced that "masks will now be required

at all times in the Hall of the House without exception, including while Members are under

recognition."  166 Cong. Rec. H7158 (daily ed. Dec. 15, 2020).  The Speaker reiterated this

policy on January 4, 2021.  *See* 167 Cong. Rec. H19, H40-41 (daily ed. Jan. 4, 2021).

7.      On January 12, 2021, House Resolution 38 was introduced and adopted by the

full House the same day.  *See* H. Res. 38, 117th Cong. (2021); 167 Cong. Rec. H274-75 (daily

ed. Feb. 2, 2021).  The Resolution provides that "the Sergeant-at-Arms is authorized and directed

to impose a fine against a Member, Delegate, or the Resident Commissioner for the failure to

wear a mask in contravention of the Speaker's announced policies of January 4, 2021."  H. Res.

38, 117th Cong. (2021) § 4(a)(1).  The Resolution imposes a $500 fine for a first offense and a

---

Washington DC.  As such, Congress may experience not only the local District of Columbia
circumstance, but also that of areas with higher risk."  *Id.* § 3.1.8.

[12] The Speaker announced that the requirement would apply "during the pendency of a
covered period pursuant to House Resolution 965," which referred to a period of time designated
by the Speaker or her designee during which members may vote by proxy due to the fact that "a
public health emergency due to a novel coronavirus is in effect."  H. Res. 965, 116th Cong.
§ 1(a) (2020).  The Speaker reiterated this policy on November 18, 2020.  166 Cong. Rec. H5875
(daily ed. Nov. 18, 2020).

[13] Memorandum from Paul D. Irving and Brian P. Monahan, *Use of Face Covers in the
House Office Buildings* (July 29, 2020), https://perma.cc/2QYR-EYAD.

$2,500 fine for any subsequent offense.  *Id.* § 4(a)(2) (incorporating by reference House Rule II.3(g)).  The fined individual may appeal to the House Committee on Ethics, which by majority vote may overturn the fine.  *Id.*  If the fine is not overturned on appeal, "the [House] Chief Administrative Officer shall deduct the amount of any fine … from the net salary otherwise due the Member, Delegate, or the Resident Commissioner."  House Rule II.4(d) (incorporated by reference in House Res. 38 § 4(a)(2)).[14]

8.      On May 11, 2021, the Speaker announced that

Consistent with updated guidance from the Office of Attending Physician, the Chair wishes to inform Members that while masks continue to be required in the Hall of the House, Members are permitted to remove their masks temporarily while under recognition.  To be clear, Members and staff must wear masks in the Hall of the House at all times except that a Member may remove their mask when recognized by the Chair.  In addition, Members presiding as Chair may remove their masks when speaking.

167 Cong. Rec. H2157 (daily ed. May 11, 2021).

9.      The emergence of the Delta variant of COVID-19 in the summer of this year led to a sharp increase in deaths across the Nation and a wave of infections in Congress.[15]  Since the middle of July, at least 17 Members of Congress, including 13 Members of the House, have

---

[14] House Resolution 38 applies during a time period in which members may vote by proxy due to the fact that "a public health emergency due to a novel coronavirus is in effect." House Res. 8, 117th Cong. § 3(s) (2021) (incorporated by reference in House Res. 38 § 4(a)).

[15] Nearly one month after Plaintiffs violated House Resolution 38, the Attending Physician announced that fully vaccinated persons no longer needed to wear a mask within the Hall of the House. *See* Brian P. Monahan, Attending Physician Pandemic Social Distancing and Daily Health Screening Implementation Guidelines for Congressional Offices and Work Centers, Version 6 (June 11, 2021) at 2, 3, 10, https://perma.cc/5WEX-VHFL.  In late July, however, following new guidance from the CDC in the wake of the emergence of the Delta variant of COVID-19, the Attending Physician reversed this guidance.  Brian P. Monahan, Congressional Coronavirus Disease Update; Centers for Disease Control Mask Wear Recommendations for Interior Spaces (July 27, 2021), https://perma.cc/A5L2-T48S.

contracted COVID-19.[16]  This includes Plaintiff Rep. Norman, who announced on August 5 that

he had tested positive for the virus and would be quarantining for the next ten days.[17]

## III.    Member Compensation

Article I, Section 6, of the Constitution provides that "Compensation" for Members of

Congress must be "ascertained by Law, and paid out of the Treasury of the United States."  U.S.

Const., Art. 1, § 6, cl. 1.  Before the early 1990s, Congress periodically enacted legislation to

alter its compensation.  *See* Cong. Rsch. Serv., CRS Report 97-1011, Salaries of Members of

Congress: Recent Actions and Historical Tables 2 (2021) (hereinafter CRS Report 97-1011).

More recently, compensation has been determined pursuant to a statutory formula for automatic

adjustments.  *See id.*  The Ethics Reform Act of 1989, 2 U.S.C. § 4501, establishes the current

annual adjustment formula, which is based on changes in private sector wages as determined by

---

[16] *See* Buchanan Tests Positive for COVID-19 (July 19, 2021), https://perma.cc/6TS4-YBJB; Jonathan Weisman, N.Y. Times, *Rep. Clay Higgins, a Staunch Opponent of Mask Mandates, Announces He and His Family Have Covid-19* (updated July 27, 2021), https://perma.cc/Q6NT-LNL9; Lindsey Graham (@LindseyGrahamSC), Twitter (Aug. 2, 2021, 3:03 PM), https://perma.cc/P5PM-DAWX; Statement from Rep. Ralph Norman on COVID-19 Test Results (Aug. 5, 2021), https://perma.cc/XN56-W4AB; Davids Statement on COVID Diagnosis (Aug. 6, 2021), https://perma.cc/Z2GE-MW2J; Hickenlooper Statement on Positive COVID-19 Test (Aug. 19, 2021), https://perma.cc/C7N6-T3DR; Senator King Announces Positive Test for Coronavirus (Aug. 19, 2021), https://perma.cc/7TVM-SUH5; Wicker Office Statement on COVID-19 Diagnosis (Aug. 19, 2021), https://perma.cc/P7AM-7XES; Barry Moore (@RepBarryMoore), Twitter (Aug. 20, 2021, 5:42 PM), https://perma.cc/3JZ6-FL27; Troy Nehls (@RepTroyNehls), Twitter (Aug. 21, 2021, 12:18 PM), https://perma.cc/AY64-8ETU; Mike Doyle (@USRepMikeDoyle), Twitter (Aug. 25, 2021, 7:48 PM), https://perma.cc/Z3AF-ZD58; Darren Soto (@RepDarrenSoto), Twitter (Sept. 8, 2021, 9:51 AM), https://perma.cc/D5QG-RYWG; Joe Morelle (@RepJoeMorelle), Twitter (Sept. 12, 2021, 12:17 PM), https://perma.cc/Y65M-WEQ2; Congressman Tim Ryan Tests Positive for COVID-19 (Sept. 20, 2021), https://perma.cc/27QA-3K55; Bob Latta (@boblatta), Twitter (Sept. 20, 2021, 6:34 PM), https://perma.cc/4J5U-XEQL; Brian Babin (@RepBrianBabin), Twitter (Sept. 25, 2021, 1:06 PM), https://perma.cc/U2WA-3BRG; Kelly Armstrong (@RepArmstrongND), Twitter (Sept. 26, 2021, 11:01 AM), https://perma.cc/YY65-G6YZ.

[17] Statement from Rep. Ralph Norman on COVID-19 Test Results (Aug. 5, 2021), https://perma.cc/XN56-W4AB.

a specified index. *See* CRS Report 97-1011 at 2. The adjustment is automatic unless it is denied

by legislation, although the percentage may not exceed the percentage base pay increase for

certain other federal employees. *See id.* Beginning with an adjustment in 1991, annual

adjustments were accepted by Congress 13 times, with the most recent adjustment in 2009. *See*

*id.* Since 2009, pay adjustments have been denied by legislation every year. *See id.*

Since 1983, Member salaries have been funded in a permanent appropriations account.

*See* CRS Report 97-1011, at 1. House Members are paid on a monthly basis. *See* 2 U.S.C.

§ 5301. Members' monthly paychecks reflect numerous voluntary and required deductions from

their salary, including deductions for federal retirement benefits, Thrift Savings Plan

contributions, health and life insurance contributions, federal and state taxes, and Social Security.

## IV.    Procedural History

1. The relevant facts in this case are straightforward and undisputed. All three

Plaintiffs are Members of the House. On May 18 and 19, 2021, each Plaintiff Member entered

the Hall of the House without wearing a mask. *See* Compl. (ECF No. 1) ¶ 26. Following each

occasion, the House Sergeant at Arms notified the respective Member that he or she would be

fined for violating House Resolution 38. Compl. ¶ 31 & Ex. A (ECF No. 1-1) at 5. The Plaintiff

Members appealed each violation to the House Ethics Committee. A majority of the House

Ethics Committee did not agree to the appeals, and thus, the appeals were denied.[18] Plaintiffs

have received notification from the Office of the Chief Administrative Officer that the amount of

their fines would be deducted from their net salary deposit. Compl. ¶¶ 44-45 & Ex. A at 2.

---

[18] Compl. Ex. A at 7 (Rep. Massie); Letter from Theodore E. Deutch and Jackie Walorski
to Nancy Pelosi (July 20, 2021) (Rep. Greene), https://perma.cc/L4R5-5UHF; Letter from
Theodore E. Deutch and Jackie Walorski to Nancy Pelosi (July 20, 2021) (Rep. Norman),
https://perma.cc/U4QC-KHFA.

2.      Plaintiffs filed a complaint, purporting to sue in their individual and official capacities, and naming as defendants Speaker of the House Nancy Pelosi, House Sergeant at Arms William Walker, and House Chief Administrative Officer Catherine Szpindor.  Compl. ¶¶ 8-10.  The complaint alleges that these House officials violated and continue to violate Article I, Sections 5, 6, and 7, of the Constitution, as well as the First and Twenty-Seventh Amendments of the Constitution, by enforcing House Resolution 38.  *Id.* ¶¶ 49-75.  Plaintiffs seek both declaratory and injunctive relief.  *Id.* at 23.

## ARGUMENT

Plaintiffs' complaint must be dismissed for two independent reasons.  First, it should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs' claims are precluded by the Speech or Debate Clause immunity expressly provided for in Article I of the Constitution.  Second, and in the alternative, the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiffs bear the burden of establishing subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  In considering a motion pursuant to Rule 12(b)(1), a court should "give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion."  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept a plaintiff's factual allegations as true and construe the complaint in favor of the plaintiff.  *See Miller v. D.C.*, 319 F. Supp. 3d 308, 312 (D.D.C. 2018).  Critically for this case, the Court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or an "inference[]" that is "unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In considering a motion to dismiss, "a court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty."  *Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).

## I.   The Speech Or Debate Clause Bars Plaintiffs' Suit

Plaintiffs' suit is barred by the Constitution's Speech or Debate Clause.  *See* U.S. Const., Art. I, § 6, cl. 1.  The Clause provides absolute immunity from civil suit for Members of Congress, Officers, and their aides for all "legislative acts"—a term that the D.C. Circuit has broadly construed to include execution and implementation of the House's internal rules.  *See McCarthy v. Pelosi*, 5 F.4th 34, 38-40 (D.C. Cir. 2021), *cert. pet. filed,* Sept. 9, 2021 (No. 21-395); *Consumers Union of U.S. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1351 (D.C. Cir. 1975).  Because Defendants' imposition and collection of fines pursuant to House Resolution 38 are legislative acts, the Clause requires dismissal of this suit.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const., Art. I, § 6, cl. 1.  The "central object" of the Clause is to protect the "independence and integrity of the

legislature." *McCarthy*, 5 F.4th at 38 (citation omitted).  The Clause also prevents litigation distractions that may "disrupt the legislative function." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

The Supreme Court has "consistently read the Speech or Debate Clause 'broadly' to achieve its purposes." *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (quoting *Eastland*, 421 U.S. at 501-02).  It is thus "long settled" that the Clause's protections apply "not just to speech and debate in the literal sense, but to all 'legislative acts.'" *McCarthy*, 5 F.4th at 39 (quoting *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973)).  Legislative acts are those that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972).  Such acts "include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction of either House.'" *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625).  Where it applies, the Clause is an "absolute bar" to suit, including when a legislative act is alleged to be in violation of the Constitution. *Eastland*, 421 U.S. at 503, 509-10.  "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel*, 785 F.3d at 24.

Further, it is "well established that the Clause's protections extend to Congressional aides and staff." *McCarthy*, 5 F.4th at 39; *see Rangel*, 785 F.3d at 25; *Gravel*, 408 U.S. at 618. Specifically, the Clause "applies to aides and staff 'insofar as their conduct … would be a protected legislative act if performed by a Member.'" *McCarthy*, 5 F.4th at 38 (quoting *Gravel*, 408 U.S. at 618).  The "key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor." *McCarthy*, 5 F.4th at 38 (citation omitted).

Plaintiffs challenge the implementation and execution of House Resolution 38, which authorizes and directs the Sergeant at Arms to impose a fine against a Member for failing to wear

a mask in the Hall of the House, and also provides that the Chief Administrative Officer shall deduct the amount of the fine from the net salary paid to the Member.  The complaint alleges that House Resolution 38, as enforced, violates the First and Twenty-Seventh Amendments and Sections 5, 6, and 7 of Article I of the Constitution.  Compl. ¶¶ 49-75.  The Plaintiffs seek various declaratory and injunctive relief that would prohibit the implementation of House Resolution 38 and the collection of fines pursuant to that rule.  *Id.* at 23.

The Speech or Debate Clause bars Plaintiffs' suit because the challenged acts here are undeniably legislative.  The Rulemaking Clause of the Constitution provides that the House may "determine the Rules of its Proceedings," and the Discipline Clause provides that the House may "punish its Members for disorderly Behaviour."  U.S. Const., Art. I, § 5, cl. 2.  The Constitution thus specifically grants to Congress the authority to adopt its own rules and to discipline its Members.  Accordingly, the House's adoption of House Resolution 38, and the enforcement and administration of that rule, are all legislative acts that are an "integral part" of a "matter[] which the Constitution places within the jurisdiction of [the] House."  *Gravel*, 408 U.S. at 625.

Under a straightforward application of D.C. Circuit precedent, Plaintiffs' suit is barred.  In *Rangel*, the D.C. Circuit held that the Speech or Debate Clause prohibited a Member's suit against other Members, committee staff, and the Clerk of the House challenging his censure as a violation of House Rules and the Due Process Clause.  785 F.3d at 23-25.  Relying on the Discipline Clause, the D.C. Circuit reasoned that Congressional discipline is "a 'legislative' matter that 'the Constitution places within the jurisdiction of [the] House.'"  *Id.* (quoting *Gravel*, 408 U.S. at 625); *see* U.S. Const., Art. I, § 5, cl. 2.

Likewise, in *Consumers Union*, a magazine publisher challenged Congressional rules requiring members of the press to apply to gain access to the House and Senate press galleries.  515 F.2d at 1342.  The D.C. Circuit held that the challenge was barred by the Speech or Debate

Clause.  *Id.* at 1351.  The court explained that the defendants were "enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress," and thus were engaged in legislative acts.  *Id.* at 1350; *see McCarthy*, 5 F.4th at 40 (reaffirming *Consumers Union*).  Here, too, the administration and enforcement of an internal House Resolution governing Member discipline—adopted by the full House pursuant to its specific constitutional authority—are obviously legislative acts that fall squarely within the Clause.

Plaintiffs cannot circumvent the Speech or Debate Clause by suing the Sergeant at Arms and the Chief Administrative Officer for their execution of House Resolution 38.  Recently, in *McCarthy v. Pelosi*, the D.C. Circuit held that the plaintiffs' lawsuit challenging the proxy voting rules was barred by the Speech or Debate Clause.  5 F.4th at 41.  In so holding, the court rejected the plaintiffs' argument that "the acts of voting on and adopting the Resolution lie within the Clause's zone of immunity, but acts undertaken in implementing the Resolution do not."  *Id.* at 40.  As the D.C. Circuit instructed, "[t]he salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it"; it "instead is between legislative acts and non-legislative acts."  *Id.* at 41.  The court noted that in *Consumers Union* it dismissed the suit against the Sergeants at Arms of both houses of Congress because the Clause "encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules."  *Id.*; *see also Consumers Union,* 515 F.2d at 1350-51.  The court thus reaffirmed that the Clause applies to actions "executing" or "enforcing" the "internal rules of Congress."  *McCarthy*, 5 F.4th at 41.

As in *McCarthy* and *Consumers Union*, the challenged acts here by the Sergeant at Arms and Chief Administrative Officer constituting the execution of House Resolution 38 are themselves legislative acts pertaining directly to the internal rules and the discipline of

14

Members—matters "that the Constitution places within the jurisdiction of [the] House." *Gravel*, 408 U.S. at 625.

Finally, applying Speech or Debate immunity here fulfills the fundamental aim of the Clause:  preserving the "independence and integrity of the legislature." *McCarthy*, 5 F.4th at 38 (citation omitted).  The continuation of this litigation—which seeks to prevent the discipline of House Members pursuant to an internal rule designed to protect the health of all persons in the Hall of the House, where all House-wide debate and voting on legislation occurs—would risk compromising the independence of the legislature and creating the distractions that the Clause was designed to prevent.  The Clause bars this action.

## II.    Plaintiffs Fail To State A Claim

This action should be dismissed for the independent reason that the complaint fails to state a claim.

### A.    The Rule Does Not Violate The Twenty-Seventh Amendment

Count I of Plaintiffs' complaint alleges that the enforcement of House Resolution 38 violates the Twenty-Seventh Amendment.   Compl. ¶¶ 49-54.  That amendment provides:  "No law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened."  U.S. Const., Amend. XXVII. The amendment was intended to augment the Ascertainment Clause, which provides that "Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1; *see* Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497, 502 (1992).  Although the amendment was introduced in Congress by James Madison in 1789, it was not ratified by the requisite three-fourths of the States until 1992.  *See* Bernstein*, supra*, at 539.  From the First Congress through the

amendment's ratification, proponents of the amendment were animated by concerns about the actual or seeming impropriety of having Congress determine its own pay.  *See id.* at 522-42.

Plaintiffs' claim pursuant to the Twenty-Seventh Amendment fails.  Under the plain text of the Twenty-Seventh Amendment, fines imposed and collected pursuant to House Resolution 38 do not change the "compensation for the services" of House Members, and House Resolution 38 is not a "law" within the meaning of the amendment.  Further, the text, history, and purpose of the amendment, as well as the logical consequences of Plaintiffs' position, all confirm that House Resolution 38 does not violate the Twenty-Seventh Amendment.

> 1. *The Plain Language Of The Twenty-Seventh Amendment Does Not Cover House Resolution 38*

By its plain text, the Twenty-Seventh Amendment does not apply to House Resolution 38 for two reasons: (1) the fines at issue do not vary Member "compensation"; and (2) House Resolution 38 is not a "law."

*First*, a fine imposed pursuant to House Resolution 38 does not "vary the compensation for the services" of Members within the meaning of the Twenty-Seventh Amendment.  A fine is a "pecuniary criminal punishment or civil penalty payable to the public treasury."  *Fine*, Black's Law Dictionary (11th ed. 2019).

In this case, the fine at issue is a penalty for the failure to comply with a requirement to wear a mask in the Hall of the House.  By contrast, "compensation" has long been understood to mean payment for services rendered, such as salary or wages.  *See, e.g., Compensation*, Black's Law Dictionary (11th ed. 2019) ("Remuneration and other benefits received in return for services rendered; esp., salary or wages."); *Compensation*, Oxford English Dictionary (2d ed. 1989) ("salary or wages … payment for services rendered"); 2 The Records of the Federal Convention of 1787 44-45 (Max Farrand ed., 1911) (using "salaries" and "compensation" interchangeably).

Relatedly, "service" is "[t]he official work or duty that one is required to perform." *Service*,

Black's Law Dictionary (11th ed. 2019); *see also Service*, A Dictionary of the English Language,

Samuel Johnson (1785) (defining "service" as "[e]mployment; business").

A fine imposed pursuant to House Resolution 38 does not change Member

"compensation" for their "services" within the meaning of the Twenty-Seventh Amendment.

House Resolution 38 affects Member salary only conditionally and indirectly:  only if a Member

is fined for failure to wear a mask in violation of the House rule may the fine be deducted from

the Member's salary.  *See* H. Res. 38; *see also* 2 U.S.C. § 4523 (providing specific authorization

for such salary deductions since 1934).

That attenuated chain of events—which will apply to a specific Member *only if* the

Member takes (or fails to take) specific actions—does not transform a fine into a varying of

compensation for the Member's services.  Indeed, even when a fine is deducted from a

Member's salary, the fine is taken from the Member's "net salary otherwise due the Member"—

*i.e.*, the Member's take-home pay for that pay period, not the Member's gross salary.  House

Rule II.4(d)(1); *see also* H. Res. 38 § 4(a)(2) (providing that fines "shall be administered as

though pursuant to clause 4(d) of rule II").  A fine thus has no effect on the total amount of

money the Member earns for his or her services, and is not a change to compensation.

This reading accords with how these terms are used in everyday life.  If a professional

athlete earns $10 million per year, but receives a $50,000 fine for violating a team or league rule,

we do not say that his "compensation" has been reduced to $9,950,000.  His compensation for

his services remains the same; his punishment for an infraction, which was wholly separate from

the services for which he was compensated, is another matter entirely.

*Second,* a House rule is not a "law" within the meaning of the Twenty-Seventh

Amendment.  House Resolution 38 was adopted by the House alone, and was not the product of

bicameralism and presentment.  In *Boehner v. Anderson*, 30 F.3d 156 (D.C. Cir. 1994)—the only appellate decision to address the meaning of the Twenty-Seventh Amendment—the D.C. Circuit held that, for purposes of the Twenty-Seventh Amendment, a "law" requires passage by both houses of Congress and is either signed by the President or takes effect when Congress overrides the President's veto.

In *Boehner*, the court considered a challenge to a provision of the Ethics Reform Act that set up a mechanism for an annual cost of living adjustment (COLA) for Members of Congress. 30 F.3d at 158.  The court held that the COLA provision did not violate the Twenty-Seventh Amendment.  *Id.*  As a preliminary matter, the court noted that "[t]he Constitution does not define a law except to say (at least implicitly) that it is the product of the legislative process" of bicameralism and presentment.  *Id.* at 161.  Specifically, the Constitution provides:  "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it … If any Bill shall not be returned by the President within ten Days … the Same shall be a Law[.]"  U.S. Const., Art. I, § 7, cl. 2.

The *Boehner* court thus explained that the Ethics Reform Act "became a law" within the meaning of the Twenty-Seventh Amendment on November 30, 1989, "when, the bill having passed both Houses and been presented to President Bush, he signed it into law."  30 F.3d at 161. Accordingly, it had "been the law since 1989 that a COLA would be made on January 1, 1991 and each year thereafter pursuant to a specified formula," and the COLA provision was constitutional "because it did not cause any adjustment to congressional compensation until after … the seating of the new Congress."  *Id.* at 162.  In other words, each annual COLA did not violate the Twenty-Seventh Amendment because the adjustments were not new "laws" within the meaning of that amendment; only the original statute—passed by both chambers of Congress

and signed by the President in 1989—was the relevant law.  *See id.*; *Boehner v. Anderson*, 809 F.

Supp. 138, 143 (D.D.C. 1992) ("The annual COLAs are not subject to the bi-cameralism

requirements of the Constitution; each year the COLA becomes effective by the terms of the

1989 Act; no additional law is necessary.  In short, each COLA is not a law and, therefore, is not

subject to the requirements of the 27th amendment."); *Shaffer v. Clinton*, 54 F. Supp. 2d 1014,

1025 (D. Colo. 1999) ("*Boehner* held annual COLAs were not independent laws under the

Twenty-seventh Amendment[.]"), *aff'd on other grounds sub nom. Schaffer v. Clinton*, 240 F.3d

878 (10th Cir. 2001).

      Consistent with the reasoning in *Boehner*, there is no "law" at issue in this case to which

the Twenty-Seventh Amendment would apply.  That amendment establishes an additional

procedural requirement for laws varying Member compensation (*i.e.*, *when* such a law can take

effect), and thus the word "law" logically takes on the procedural meaning contemplated in

Article I.  *See* GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment:*

*Meaning and Application*, Harvard Journal of Law & Public Policy, Sept. 2, 2021, at 9-11.[19]

The complaint challenges only House Resolution 38, which is simply an internal resolution

adopted by a single chamber of Congress, not the product of the bicameralism-and-presentment

process set out in the Constitution.  *See Boehner*, 30 F.3d at 161.  The Twenty-Seventh

Amendment, therefore, does not apply.

      Furthermore, there is no question that the Ascertainment Clause, which the Twenty-

Seventh Amendment modifies, refers to laws enacted through the process of bicameralism and

presentment when it provides that Congressional compensation shall be "ascertained by law."

*See Humphrey v. Baker*, 848 F.2d 211, 215 (D.C. Cir. 1988) (holding that statutory delegation of

---

[19] *Available at* https://perma.cc/L8KA-77SA.

authority to President to set Congressional salaries, subject to Congressional disapproval, did not violate Ascertainment Clause where "the procedures eventuating in the specific figures" were set by legislation); *see also* Canaparo & Larkin, *supra*, at 9-11.  Thus, the identical term "law" in the Twenty-Seventh Amendment, introduced by James Madison in the First Congress as a supplement to the Ascertainment Clause, should be given the same meaning.

Finally, Plaintiffs fatally undermine their argument by noting, elsewhere in their Complaint, that "H. Res. 8 and H. Res. 38 are not a 'Law' under the Constitution, as they have not undergone the process of passage in both Houses of Congress and presentment to the President."  Compl. ¶ 65; *see also id.* ¶ 4 ("a house resolution … does not carry the weight of 'Law,'").  Because Plaintiffs are correct, their Twenty-Seventh Amendment claim must fail.

2. *The Twenty-Seventh Amendment's History And Purpose Confirm That House Resolution 38 Does Not Violate The Amendment*

The history and purpose of the Twenty-Seventh Amendment further support that it does not apply to House Resolution 38.  In the words of Madison as reported by the Annals of Congress, the Amendment was intended to address the "seeming impropriety in leaving any set of men without control to put their hand into the public coffers, to take out money to put in their pockets."  1 Annals of Cong. 440 (Joseph Gales, ed. 1834).  Between 1789 and 1791, the amendment was ratified by six States but rejected by five, and thus was not adopted.  *See* Bernstein, *supra*, at 533-34.  In 1873, however, Ohio ratified the amendment in response to legislation increasing the pay of Federal Government officials (the so-called "Salary Grab" Act). *See id.* at 534.  Wyoming followed suit in 1978, after a Congressional pay increase.  *See id.* at 537.  Thirty-three additional states ratified the amendment between 1983 and 1992, after which Congress recognized the amendment as the Twenty–Seventh Amendment to the Constitution. *See id.* at 537-38, 542.

20

As this history demonstrates, the Amendment was designed to address the potential for abuse and the appearance of impropriety that necessarily exist when a group of individuals sets its own pay. Indeed, as the D.C. Circuit has explained, "[a]ccording to Madison, and to all the ratifying [S]tates that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase 'cannot be for the particular benefit of those who are concerned with determining the value of the service.'" *Boehner*, 30 F.3d at 159 (quoting James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in Creating the Bill of Rights: The Documentary Record from the First Federal Congress* 84 (Helen E. Veit et al., eds., 1991)). A fine deducted from the salary of a House Member for refusal to wear a mask simply does not implicate the purpose of the Twenty-Seventh Amendment. There is no impropriety—seeming or actual—in fining an individual who defies a House rule; indeed, if all Members followed the rule, the fines would not be imposed at all.

### 3. A Contrary Reading Would Distort The Twenty-Seventh Amendment By Sweeping In Other Statutes And Rules

Finally, the logical impact of Plaintiffs' position upon other statutes and rules confirms that House Resolution 38 does not violate the Twenty-Seventh Amendment. In 1934, Congress authorized the then-appropriate Congressional officials (now the Chief Administrative Officer of the House and the Secretary of the Senate) to "deduct from any salary" of a Member any "delinquent sum" that a Member owed but "fail[ed] to pay." 2 U.S.C. § 4523. If House Resolution 38 was understood to violate the Twenty-Seventh Amendment, so too would a statute that allows for the deduction of debts from Member salaries.

Likewise, the House honors court-ordered garnishments against Members for debts such as child support or other judgments. *See* 5 U.S.C. § 5520a(a)(1)(D), (a)(3)(B), (b). Again, under Plaintiffs' reading of the Twenty-Seventh Amendment, such garnishments would likely be

unconstitutional.  What is more, Plaintiffs' reading of the Twenty-Seventh Amendment could even reach other common deductions from Member pay, such as changes to tax withholdings, deductions for health or life insurance, and deductions for retirement benefits.

Just four years ago, the House adopted a resolution—much like House Resolution 38— that amended the House Rules to authorize the Sergeant at Arms to "impose a fine" against any Member who violated a policy prohibiting recordings in the Chamber, and to authorize the Chief Administrative Officer to "deduct the amount of any fine" from a Member's "net salary."  H. Res. 5 § (2)(a)(1), 115th Cong. (2017).  If House Resolution 38 is unconstitutional, that resolution would be as well.  However, the Plaintiff in this case who was a Member at the time voted in favor of adopting it.  *See* 163 Cong. Rec. H7, H26 (daily ed. Jan. 3, 2017) (recording the affirmative vote of Rep. Massie).

Plaintiffs' theory—that the resolution at issue violates the Twenty-Seventh Amendment because fines may be deducted from Members' net pay—would call into question the constitutionality of the foregoing statutes, rules, and deductions.  As explained above, neither the text nor history nor purpose of the statute supports a reading that would lead to that extreme result.

### B.    The Rule Does Not Violate Section 5 Of Article I Of The Constitution

Count II of Plaintiffs' complaint alleges violations of the Discipline Clause of the Constitution.  Compl. ¶¶ 55-59.  The Discipline Clause of the Constitution provides: "Each House may … punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."  U.S. Const., Art. I, § 5, cl. 2.  The Discipline Clause gives both houses of Congress "broad official powers" to address, among other things, "'violations of internal congressional rules'" and "'even purely private conduct by a Member that, in the House's opinion, reflects badly on it as an institution.'"  *In re Grand Jury Subpoenas*, 571 F.3d 1200,

1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (quoting Josh Chafetz, Democracy's

Privileged Few 74, 210 (2007)).  Accordingly, the Discipline Clause "grants expansive authority

for each House to discipline and sanction its Members for improper behavior."  *Id.*; *see also*

*Kilbourn v. Thompson*, 103 U.S. 168, 189-90 (1880) ("[T]he Constitution expressly empowers

each House to punish its own members for disorderly behavior," even including "imprisonment

… for refusal to obey some rule on that subject made by the House for the preservation of

order.").

The imposition and collection of a fine for refusal to comply with a health requirement

measure mandated by a vote of the House to combat a pandemic easily falls within the scope of

the House's broad authority pursuant to the Discipline Clause.  Indeed, even using Plaintiffs'

preferred definition of "disorderly," the failure to follow a House rule that prescribes compliance

with a health measure plainly qualifies:  it is conduct that is "contrary to rules."  *Disorderly*,

American Dictionary of the English Language, Noah Webster (1828);[20] *see* Compl. ¶ 56 & n.25

(citing alternate language within same definition).  House Resolution 38 is fully consistent with

the Discipline Clause.

Since the 19th century, the House has exerted its authority to impose fines on Members

for behavior inconsistent with its operations.  In 1856, Congress passed a law authorizing the

House Sergeant at Arms (and the Secretary of the Senate) to deduct from a Member's take-home

pay the amount of salary corresponding to days on which the Member was absent unless due to

sickness.  Rev. Stat. 40 (Aug. 16, 1856); *see also* IV Hinds' Precedents of the House of

Representatives §§ 3011-14 (1907) (discussing impositions of such fines by the House).  In

recent decades, the House has imposed fines on Members on several occasions for improper

---

[20] A*vailable at* https://perma.cc/JB5C-KWLY.

conduct.  *See* Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Fine:

Legislative Discipline in the House of Representatives 14 (2016).  For instance, in 1969, the

House fined a Member $25,000—to be withdrawn from the Member's pay—for various

offenses, including the misuse of official committee appropriations, payroll, and expenses.  *See*

*id.*  To take yet another example, in 2012 a Member was fined $10,000 in conjunction with her

reprimand for misuse of official resources.  *See id.*  And just last year, a Member was fined

$50,000 in conjunction with his reprimand, also for misuse of official resources.[21]  That history

and practice further confirm the constitutionality of House Resolution 38.

Nor is there any merit to Plaintiffs' assertion that the Discipline Clause was violated

because Plaintiffs' fines were imposed without a vote of the entire House.  Compl. ¶ 58.  House

Resolution 38 was passed by a vote of the entire House; it delegated to the Sergeant at Arms the

authority to impose any fines for any violations and authorized the Committee on Ethics to

adjudicate any appeals of such fines.  The Discipline Clause requires no more.

### C.   The Rule Does Not Violate Section 6 Or 7 Of Article I Of The Constitution

Count III of Plaintiffs' complaint alleges that House Resolution 38 also violates Article I,

Sections 6 and 7 of the Constitution—specifically, the Ascertainment and Presentment Clauses.

Compl. ¶¶ 60-67.  That count fails as a matter of law as well.

The Ascertainment Clause of the Constitution provides: "The Senators and

Representatives shall receive a Compensation for their Services, to be ascertained by Law, and

paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1.  The Presentment

---

[21] *See* Comm. on Ethics, *In the Matter of Allegations Related to Representative David*
Schweikert, H. Rep. No. 116-465, at 1-3 (2020).

Clause of the Constitution provides that legislation must be presented to the President for his approval or disapproval in order to become a law.  U.S. Const., Art. I, § 7, cl. 2.[22]

Plaintiffs correctly note that "to be a 'Law,' sufficient to set compensation, any measure must comply with the provisions of Article 1, §§ 6 and 7" and that "H. Res. 8 and H. Res. 38 are not a 'Law' under the Constitution, as they have not undergone the process of passage in both Houses of Congress and presentment to the President."  Compl. ¶¶ 64-65.  But Plaintiffs' argument founders on one of the many shoals that doom its Twenty-Seventh Amendment claim: as discussed at length above, *see supra* pp. 16-20, H. Res. 38 does not set "compensation" for the Members' "services."  The resolution merely imposes a fine for violating a House rule, which a Member can avoid simply by wearing a face mask while in the Hall of the House.  Therefore, this claim too fails.

### D.      The Rule Does Not Violate The First Amendment

Count IV of Plaintiffs' complaint alleges violations of the First Amendment.  Compl. ¶¶ 68-75.  Plaintiffs make three First Amendment arguments: (1) that the requirement to wear a

---

[22] The full text of the Presentment Clause is as follows:

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it.  If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law.  But in all such Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively.  If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

mask in the Hall of the House constitutes "compelled speech," Compl. ¶ 73, *see also id.* ¶ 70; (2) that Plaintiffs' refusal to wear a mask, leading to their fines, "was done to express symbolic speech, including as a form of protest against unscientific, governmental mandates directing what people wear," *id.* ¶ 72; and (3) that the rule was enforced in a "viewpoint discriminatory manner," *id.*  Each of these arguments fails.

As an initial matter, it is worth noting that a vast array of governmental entities have imposed mask requirements during the pandemic, and Defendants are unaware of any successful First Amendment challenge to such requirements.  Indeed, the very Court in which Plaintiffs filed this case currently requires all individuals to wear a mask while in the courthouse, with exceptions only for persons in a Judge's chambers and for, at the presiding Judge's discretion, participants in court proceedings.  *See In Re: Reinstatement of Mask Requirement for All Individuals in Public and Non-Public Areas of Courthouse*, Standing Order No. 21-45 (BAH) (July 30, 2021).  If this Court held an in-person hearing on this motion to dismiss, Plaintiffs would be unable to attend if they refused to wear masks; we assume that Plaintiffs and their attorneys would not claim that this Court's mask requirement violates the First Amendment..

Plaintiffs' compelled speech argument is mistaken. The First Amendment protects persons from being compelled to speak, and in some cases, compelled *conduct* can also constitute a First Amendment violation.  *See, e.g.*, *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (resolution compelling students to salute the flag is unconstitutional). However, the Supreme Court has "rejected the view that 'conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'"  *Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.* ("*FAIR*"), 547 U.S. 47, 65-66 (2006) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).  Rather, the Supreme Court has "extended

First Amendment protection only to conduct that is *inherently* expressive." *Id.* at 66 (emphasis added).

Wearing a mask to combat a pandemic spread by an airborne virus is plainly not "inherently expressive."  That doing so may reflect a view about the effectiveness of masks at reducing transmission of COVID-19 makes it no more expressive than fastening a seatbelt while driving or staying home when sick.  *See City of Dallas v. Stanglin*, 490 U.S. 19, 25-26 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes— for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."). Plaintiffs' protestations that they are being forced to convey a message that they disagree with does not bring the conduct required by the rule within the ambit of the First Amendment.  "If combining speech and conduct were enough to create expressive conduct," the Supreme Court has noted, "a regulated party could always transform conduct into 'speech' simply by talking about it." *FAIR*, 547 U.S. at 66.  Such a rule would yield absurd results: "if an individual announces that he intends to express his disapproval of the Internal Revenue Service by refusing to pay his income taxes, we would have to . . . determine whether the Tax Code violates the First Amendment." *Id.*

Plaintiffs' argument that they were unconstitutionally punished for not wearing masks— conduct that they believe warrants First Amendment protection as symbolic speech—is equally mistaken.  "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts ask "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (cleaned up). If a court answers both questions in the affirmative, it must then ask "whether [the government]

has asserted an interest in support of [the punishment of Plaintiffs] that is unrelated to the

suppression of expression." *Id.* at 407.  If so, then the "relatively lenient," *id.*, standard of *United*

*States v. O'Brien*, 391 U.S. 367 (1968), applies.  Under that standard,

> a government regulation is sufficiently justified if it is within the constitutional
> power of the Government; if it furthers an important or substantial governmental
> interest; if the governmental interest is unrelated to the suppression of free
> expression; and if the incidental restriction on alleged First Amendment freedoms
> is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.

Although Plaintiffs allege "an intent to convey a particularized message," it cannot be

said that "the likelihood was great that the message would be understood by those who viewed

it." *Johnson*, 491 U.S. at 404.  As a district court recently wrote, in rejecting a First Amendment

challenge to a mask regulation, "an observer would have no idea why someone is not wearing a

face covering.  Absent explanation, the observer would not know whether the person is exempt

from [the regulation], or simply forgot to bring a face covering, or is trying to convey a political

message." *Minnesota Voters Alliance v. Walz*, 492 F. Supp. 3d 822, 837-38 (D. Minn. 2020).

That these particular Plaintiffs may have intended to convey a message is not enough:  "the fact

that a nonsymbolic act is the product of [a] deeply held personal belief—even if the actor would

like it to *convey* his deeply held personal belief—does not transform action into First

Amendment speech." *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011); *see*

*also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion) ("Being 'in a state

of nudity' is not an inherently expressive condition.").

And even if the "likelihood w[ere] great" that Plaintiffs' alleged message would be

understood, Plaintiffs would fail the *O'Brien* test, which would apply because the House of

Representatives has articulated an interest "unrelated to the suppression of expression"—*i.e.*,

combating the spread of COVID-19.  The rule easily meets all four *O'Brien* requirements: it is within the House's constitutional power, it furthers the substantial interest of the House in fighting a pandemic, that interest is unrelated to suppressing free expression, and any "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  *O'Brien*, 391 U.S. at 377.  As to the final *O'Brien* element, Plaintiffs retain ample opportunity to criticize the mask requirement even while abiding by it, whether by condemning it in a speech on the House floor or by other means.  Indeed, Rep. Massie has done just that, tweeting on multiple occasions a photo of himself wearing a mask displaying the message "I'm just wearing this so I don't get fined."[23]  On one occasion, Rep. Greene is pictured standing next to him wearing a mask displaying the message "FIRE FAUCI."[24]

Finally, Plaintiffs allege that the rules "have been enforced in a partisan and viewpoint discriminatory manner to prohibit such symbolic speech from members who are not in the majority."  Compl. ¶ 72.  This assertion too fails because, for the reasons discussed above, Plaintiffs' failure to wear a mask is not First Amendment-protected speech.  Unlike in a hypothetical case where Members were singled out and punished for wearing masks that displayed statements antagonistic to the House majority, no "viewpoint" is subject to regulation here.  An allegation that a rule is being selectively enforced does not rise to the level of a First

---

[23] Thomas Massie (@RepThomasMassie), Twitter (Jan. 31, 2021, 8:33 PM), https://perma.cc/QWA4-D69P.

[24] Thomas Massie (@RepThomasMassie), Twitter (Apr. 20, 2021, 4:32 PM), https://perma.cc/KNV8-VETW; *see also* Dennis Romboy, *What's on a Mask?  Politicians Send Messages with Face Coverings*, Deseret News, Mar. 10, 2021, https://perma.cc/BJ7W-UCFA. (describing Rep. Greene as "[p]erhaps the queen of message masks" and noting that she "has worn an array of face coverings, including ones reading 'Trump Won,' 'Stop the Steal,' 'Censored,' 'Free Speech' and 'End Abortion'").

Amendment violation when the conduct covered by the rule is itself not a First Amendment issue.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants Nancy Pelosi, William J. Walker, and Catherine Szpindor*

September 28, 2021

30