UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HON. THOMAS MASSIE, in his individual and official capacities; HON. MARJORIE TAYLOR GREENE, in her individual and official capacities; HON. RALPH NORMAN, in his individual and official capacities, <br><br> Plaintiffs, <br><br> v. <br><br> HON. NANCY PELOSI, in her official capacity; WILLIAM J. WALKER, in his official capacity; CATHERINE SZPINDOR, in her official capacity, <br><br> Defendants. | CASE NO. 1:21-CV- 02023-RBW |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Plaintiffs state that the following material facts are not in dispute:

1. Plaintiff, Hon. Thomas Massie, is the incumbent United States Congressman for Kentucky's Fourth Congressional District and is a resident of Kentucky. (Pl.'s Ver. Compl. ¶5).

2. Plaintiff, Hon. Marjorie Taylor Greene, is the incumbent United States Congresswoman for Georgia's Fourteenth Congressional District and is a resident of Georgia. (Pl.'s Ver. Compl. ¶6).

3. Plaintiff, Hon. Ralph Norman, is the incumbent United States Congressman for South Carolina's Fifth Congressional District and is a resident of South Carolina. (Pl.'s Ver. Compl. ¶7).

4. Defendant, Hon. Nancy Pelosi, is the current Speaker of the House of Representatives. (Pl.'s Ver. Compl. ¶ 8). She is sued in her official capacity only, and only to the extent that she is performing administrative and oversight duties of the other two Defendants, William Walker

1

and Catherine Szpindor, as explained further herein. *Id.* She is not sued, however, for her legislative acts, including for statements made on the House floor. *Id.*

5. Defendant, William Walker, is the current House Sergeant at Arms and is sued in his official capacity only. (Pl.'s Ver. Compl. ¶ 9). Among other things, he is responsible for enforcing and implementing, and does enforce and implement, the challenged rules and imposition of fines, as explained below. *Id.*

6. Defendant, Catherine Szpindor, is the current Chief Administrative Officer of the House of Representatives and is sued in her official capacity only. (Pl.'s Ver. Compl. ¶ 10). Among other things, she is responsible for enforcing and implementing, and does enforce and implement, the challenged rules and the imposition of and collection of fines through compensation reduction, as explained below. *Id.*

7. On or about November 3, 2020, each of the Plaintiffs were elected or re-elected to a term of office beginning January 3, 2021. (Pl.'s Ver. Compl. ¶ 13).

8. On January 3, 2021, Speaker Pelosi had a partial plexiglass box constructed on the gallery of the Hall of the House so that Members of the majority who had been exposed to COVID-19 could enter the COVID-19 box to vote to re-elect her Speaker of the House. (Pl.'s Ver. Compl. ¶ 14). The enclosure did not extend even half way to the ceiling and was located immediately below ventilation vents that would spread viral particles throughout the Hall of the House. *Id.* She then brought the COVID-19 positive Members into the House for that purpose. *Id.* In doing this, these Members were permitted to walk the hallways in the House, while potentially spreading COVID-19 to reach the COVID-19 box. *Id.* This was deemed permissible so that these Members could

cast votes for Representative Pelosi to be elected Speaker of the House.[1]  *Id.*  A photograph of the COVID-19 box is below:



*Id.*

9.  On or about January 12, 2021, the House of Representatives, in the 117th Congress, enacted H. Res. 38[2] by a party-line vote where none of the members belonging to the minority party voted in favor of the resolution.  (Pl.'s Ver. Compl. ¶ 15).  That Resolution, among other things, provided for a mask requirement in Section 4, which states in relevant part:

> SEC. 4. (a) During a covered period[3] designated pursuant to section 3(s) of House Resolution 8—
>
> (1) the Sergeant-at-Arms is authorized and directed to impose a fine against a Member, Delegate, or the Resident Commissioner for the failure to wear

---

[1] https://thehill.com/homenews/house/532430-house-sets-up-separate-enclosure-for-votes-from-members-exposed-to-covid-19 (last visited 7/27/2021).

[2] *See* https://www.congress.gov/117/bills/hres38/BILLS-117hres38eh.pdf (last visited 7/23/2021).

[3] On or about May 15, 2020, the House of Representatives, in the 116th Congress, enacted H. Res. 965, which, among other things, created a "covered period," during which members of Congress could vote by proxy. *See* https://www.congress.gov/116/bills/hres965/BILLS-116hres965eh.pdf (last visited 7/14/2021).  The "covered period" was for a 45-day period plus additional periods if extended, and it has been repeatedly extended by the Speaker.  On or about January 4, 2021, the House of Representatives, in the 117th Congress, enacted H. Res. 8, which, among other things, incorporated the 2020 H. Res. 965 with certain changes not material to this matter, continuing the "covered period" provisions permitting voting by proxy. *See* https://www.congress.gov/117/bills/hres8/BILLS-117hres8eh.pdf (last visited 7/23/2021).

3

a mask in contravention of the Speaker's announced policies of January 4, 2021; and

(2) a fine imposed pursuant to this section shall be treated as though imposed under clause 3(g) of rule II,[4] and shall be administered as though pursuant to clause 4(d) of rule II[5] …

(b) Subsection (a) establishes a standard of conduct within the meaning of clause 3(a)(2) of rule XI.

10. This resolution, by incorporating 4(d) of rule II, requires the Chief Administrative Officer to "deduct the amount of any fine levied … from the net salary otherwise due the Member, Delegate, or the Resident Commissioner."[6] (Pl.'s Ver. Compl. ¶ 16).

11. The Speaker's announced policies of January 4, 2021, which H. Res. 38 incorporate, states: "Members and staff will be required to wear masks at all times in the Hall of the House without exception, including while Members are under recognition. Members will not be recognized unless they are wearing a mask, and recognition will be withdrawn if they remove their mask while speaking."[7] (Pl.'s Ver. Compl. ¶ 17).

---

[4] That rule states: "(g)(1) The Sergeant-at-Arms is authorized and directed to impose a fine against a Member, Delegate, or the Resident Commissioner for the use of an electronic device for still photography or for audio or visual recording or broadcasting in contravention of clause 5 of rule XVII and any applicable Speaker's announced policy on electronic devices. (2) A fine imposed pursuant to this paragraph shall be $500 for a first offense and $2,500 for any subsequent offense."   https://rules.house.gov/sites/democrats.rules.house.gov/files/documents/116-House-Rules-Clerk.pdf   (last visited 7/23/2021).

[5] That Rule states: "(d)(1) Upon notification from the chair of the Committee on Ethics pursuant to clause 3(g)(3)(C), the Chief Administrative Officer shall deduct the amount of any fine levied under clause 3(g) from the net salary otherwise due the Member, Delegate, or the Resident Commissioner. (d)(2) The Chief Administrative Officer is authorized to establish policies and procedures for such salary deductions." (last visited 7/23/2021).

[6] *Id*.

[7] That policy stated in full: "As such, the Chair wishes to stress the importance of safe practices. Members and staff will be required to wear masks at all times in the Hall of the House without exception, including while Members are under recognition. Members will not be recognized unless they are wearing a mask, and recognition will be withdrawn if they remove their mask while speaking. … Members and staff will not be permitted to enter the Hall of the House without wearing a mask. Masks will be available at the entry points for any Member who forgets to bring one. The Chair views the failure to wear a mask as a serious breach of decorum. The Sergeant-at-Arms is directed to enforce this policy." At H40 to H41. https://www.congress.gov/117/crec/2021/01/04/CREC-2021-01-04.pdf (last visited 7/14/2021).

12. The policy in question was only applicable to the Hall of the House, one of the most highly televised areas of the House, and was not applicable to a myriad of other areas, including, without limitation, committee hearings and committee hearing rooms, other meeting rooms including the crowded and dense rooms where the majority and minority caucuses meet, the hallways leading to the chamber, including the crowded security checkpoints, crowded elevators, or the Members' dining room or other dining areas. (Pl.'s Ver. Compl. ¶ 18). The rule, therefore, appears to have been designed not for safety, but to compel symbolic speech regarding, *inter alia*, masks and individual rights in the manner favored by the majority, and to compel that speech solely in an area designed to play to the television cameras that cover the Hall of the House. *Id.*

13. Wearing a mask conveys a particularized message: namely, that mandatory face coverings are medically and scientifically necessary to prevent the spread of the coronavirus, that these intrusions on bodily integrity are necessary and essential, that informed consent and civil liberties are to be suppressed in favor of government's decisions regarding public health, and that individuals cannot be given the choice to make their own decisions regarding their facial attire and medical choices. (Pl.'s Ver. Compl. ¶ 19).

14. The intent of the majority's masking requirement was to force all members of the House to participate in conveying these messages by forcing them to wear a mask in televised areas only. (Pl.'s Ver. Compl. ¶ 20). Those viewing the House proceedings would understand, and did understand, the message the majority was forcing the minority to participate in conveying. *Id.*

15. Being forced to wear a mask, under these circumstances, involved both compelled statements of fact and opinion, all of which were embodied in the symbolic speech in question. (Pl.'s Ver. Compl. ¶ 21).

16.     The masking requirement was an attempt to prescribe what shall be orthodox in politics, medicine, and science, despite a deep divide over these issues of opinion. (Pl.'s Ver. Compl. ¶22). It has been used to force Plaintiffs and other members of the minority party to be instruments for fostering public adherence to this ideological point of view that Plaintiffs find unacceptable. *Id.* The majority's mask requirement, and the ad-hoc purported changes thereto by the Speaker, all followed on the heels of public pronouncements against mask requirements by the Plaintiffs and other members of the minority, and the majority's favored approach regarding their use. *Id.*

17.     On or about May 11, 2021,[8] the Speaker unilaterally purported to grant exceptions to the mask mandate for members under recognition – that is, members involved in actively projecting their voices on the floor of the House, further demonstrating that the mask mandates: (i) were not necessary to prevent disruption; (ii) were not necessary to ensure health or safety; but (iii) were instead about compelling a form of speech and message. (Pl.'s Ver. Compl. ¶ 23). Again, on June 11, 2021, the Speaker unilaterally purported to grant exceptions to the mask mandate for the vaccinated, again with an intent to send a message, namely that vaccination was necessary for safety.[9] *Id.*

17.     These exceptions were not undertaken through changes to H. Res. 8 or H. Res. 38. Rather, these exceptions were created on an ad-hoc basis by Defendant Pelosi. (Pl.'s Ver. Compl. ¶ 24). They were made outside the legislative process and not from any statements on the House floor. *Id.*

---

[8] *See* https://www.congress.gov/congressional-record/2021/05/11/house-section/article/H2157-6 (last visited 7/22/2021).

[9] *See* https://www.rollcall.com/2021/06/11/house-chamber-mask-mandate-lifted-for-vaccinated-members-staff/ (last visited 7/21/2021).

18. The fact that these ad-hoc exceptions were used to punish Plaintiffs for speech the Speaker and majority disfavored is clear from Plaintiffs' treatment versus the treatment received by numerous members of the majority in the House. (Pl.'s Ver. Compl. ¶ 25). In fact, not one member of the majority party has been fined pursuant to H. Res. 38, but many of them have violated that rule. *Id.*

19. On May 18, and again on May 19, 2021, as seen in the following photos, Plaintiffs entered the House floor to vote without wearing masks:





(Pl.'s Ver. Compl. ¶ 26).

20. The reason for Plaintiffs proceeding to the floor without masks was to engage in symbolic protest speech. (Pl.'s Ver. Compl. ¶ 27). This protest speech was a protest against the double standard being enforced by Defendants, the well-founded beliefs shared by Plaintiffs that mask

7

wearing is not scientifically based, that mask wearing is not necessary for the vaccinated or naturally immune, that mask wearing is merely political theater, that one's bodily integrity should be free from government control, that individuals should have the liberty to choose what they wear on their face, and that individuals should be free to make their own medical decisions. *Id.* Plaintiffs' symbolic speech was also an effort to highlight recent scientific findings that the use of face coverings has no appreciable effect on slowing or halting the spread of COVID-19.[10] *Id.* As such, masks have become a modern-day political battle ground between, *inter alia*, freedom and bodily integrity versus governmental overreach, and Plaintiffs' actions in proceeding to the House floor without masks was quintessential symbolic speech. *Id.*

21. These Plaintiffs, in being forced to wear a mask, did not intend to and would never voluntarily convey any of the particularized messages the public recognizes in wearing a mask, but Plaintiffs nevertheless were forced to convey these unwanted messages in light of the mandate contained in H. Res. 38, including, *inter alia*, purported imprimatur and support for mask wearing and mandates. (Pl.'s Ver. Compl. ¶ 28).

22. The Plaintiffs' symbolic speech – failing to wear a mask – involved an intent by Plaintiffs to convey a particularized message. (Pl.'s Ver. Compl. ¶ 29). Given their public positions and battle against the majority on this issue, it was manifest that the message be understood by those

---

[10] *See, e.g.*, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html (last visited 7/16/2021) ("People release respiratory fluids during exhalation (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes. These droplets carry virus and transmit infection. … The smallest very fine droplets, and aerosol particles formed when these fine droplets rapidly dry, are small enough that they can remain suspended in the air for minutes to hours"); https://www.medpagetoday.com/special-reports/exclusives/92564 (last visited 7/16/2021). ("The new guidance acknowledges that inhalation of aerosols -- which are tiny, lightweight viral particles that can float and linger in the air for extended periods of time -- is one-way COVID-19 spreads. Even when an infectious person is more than 6 feet away, aerosols have the ability to travel and infect others."); https://pubmed.ncbi.nlm.nih.gov/1524265/ (last visited 7/16/2021) ("Although surgical mask media may be adequate to remove bacteria exhaled or expelled by health care workers, they may not be sufficient to remove the submicrometer-size aerosols containing pathogens to which these health care workers are potentially exposed.").

who viewed their protest as a symbolic act or display. *Id.* Indeed, news sources at the time understood and reported these acts as symbolic speech and a protest.[11] *Id.*

23. The record is also clear that Plaintiffs' activities did not disrupt, delay, or otherwise interfere in any way with House proceedings. (Pl.'s Ver. Compl. ¶ 30). In fact, as a video of the day in question makes plain, the proceedings in the House did not halt or stop at any time as a result of Plaintiffs' actions, nor did the presiding officer delay the proceedings to address the lack of face coverings by Plaintiffs. *Id.* *See* https://www.c-span.org/video/?511817-2/house-passes-anti-asian-american-hate-crimes-bill-364-62&start=4694&transcriptQuery=coronavirus at 4:14:45 to 4:45:14 (last visited 7/26/2021). *Id.* Consequently, Plaintiffs solely engaged in non-disruptive symbolic political speech. *Id.*

24. Nevertheless, despite not disrupting the activities of the House in any way, to further the majority's public message and position regarding masks, Defendants chose to selectively enforce H. Res. 38 against Plaintiffs. (Pl.'s Ver. Compl. ¶ 31). After Plaintiffs' appearances on the House floor, Defendant Walker sent correspondence to each of the Plaintiffs imposing a fine against each Plaintiff in the amount of $500, which according to H. Res. 38 would be deducted from Plaintiffs' compensation through procedures overseen by Defendant Szpindor. *Id.* A true and accurate copy of relevant portions of notifications and correspondence related to the compensation reduction is attached as **Exhibit A** to Plaintiffs' Verified Complaint. *Id.*

25. Plaintiffs appealed these fines to the House Ethics Committee, but in votes split between Democrats and Republicans, the Committee denied each appeal.[12] (Pl.'s Ver. Compl. ¶ 32).

---

[11] *See* https://www.forbes.com/sites/andrewsolender/2021/05/20/marjorie-taylor-greene-fined-500-for-repeatedly-going-maskless-on-house-floor/?sh=5a2ed08b70e9 (last visited 7/22/2021).

[12] In pursuing their partisan weaponization of the mask rule, four of the five Democratic members who sat in judgment and adjudicated Representative Greene's appeal refused to recuse themselves despite having previously signed a resolution calling for her expulsion from

26.     Reflecting the partisan and compelled speech nature of the majority's mask mandate, the very same day that Plaintiffs appeared on the House floor without masks, the Speaker herself also appeared on the House floor without a mask, as can be seen in the following photo taken on May 18, 2021.  (Pl.'s Ver. Compl. ¶ 33).  Speaker Pelosi did so because she unilaterally, without any amendment to H. Res. 8 or H. Res. 38, decided that not wearing a mask was acceptable while under recognition to speak in the chamber, but not acceptable when Plaintiffs entered the chamber:

[13]  *Id.*

27.     Defendant Walker took no actions to fine Speaker Pelosi despite her violation of the exact same rule – H. Res. 38 – as Plaintiffs violated on the very same day.   (Pl.'s Ver. Compl. ¶ 24).

28.     Similarly, on June 8, 2021, Representative Jamie Raskin, a Democrat, also appeared on the House floor without a face covering, as can be seen in the following photograph:

---

Congress.  https://www.congress.gov/bill/117th-congress/house-resolution/260/text?r=55&s=1 (last visited 7/26/2021); https://ethics.house.gov/about/committee-members (last visited 7/26/2021).
[13]   https://www.c-span.org/congress/?chamber=house&date=2021-05-18  (House Session from 5/18/2021; last visited 7/21/2021).

 [14] (Pl.'s Ver. Compl. ¶ 35).

29.     Again, Defendant Walker took no actions to fine Representative Raskin. (Pl.'s Ver. Compl. ¶ 36).

30.     Thereafter, on or about June 11, 2021, Speaker Pelosi unilaterally decided that anyone who admitted they were vaccinated against COVID-19 could appear on the House floor without a mask. (Pl.'s Ver. Compl. ¶ 37). Once again, Congress did not amend H. Res. 8 or H. Res. 38. *Id.* Instead, Speaker Pelosi simply decided by an *ultra vires* fiat that the rules would not be enforced against such individuals. *Id.*

31.     Speaker Pelosi's June 11, 2021 fiat was a substantial change in her position from early May 2021 and was transparently reactive to Plaintiffs and other minority members' position that vaccination status is private medical information that should not need to be shared with the government.[15] (Pl.'s Ver. Compl. ¶ 38). The political motivation for the June 11, 2021 policy change is further demonstrated by the fact it came after Speaker Pelosi had faced substantial

---

[14] https://www.c-span.org/congress/?chamber=house&date=2021-06-04 (House Session from 6/4/2021; last visited 7/21/2021).

[15] *See* https://www.foxnews.com/politics/pelosi-slams-unvaccinated-lawmakers-house-floor-petri-dish-covid (last visited 7/23/2021); https://www.cnn.com/world/live-news/coronavirus-pandemic-vaccine-updates-05-20-21/h_ae0334e68999d960efc0b1144135d970 (last visited 7/23/2021).

opposition from the House Minority Leader Kevin McCarthy and several other Republican lawmakers over the House masking rules.[16]  *Id.*

32.     As Speaker Pelosi knew would happen, Congresswoman Greene did not and will not disclose her vaccination status as a protest against unwarranted invasions by the government into people's individual private medical information and decisions.[17]   (Pl.'s Ver. Compl. ¶39). Similarly, Congressman Massie had, on the dates in question, already had COVID-19 months prior, recovered from it, and demonstrated that he has robust natural immunity as a result.  *Id.* Therefore, he has chosen not to receive the vaccine and had made public statements about that choice.[18]  *Id.*

33.     Speaker Pelosi knew that minority members were opposed to a policy which directed individuals to reveal their private health information and vaccination status.  (Pl.'s Ver. Compl. ¶ 40).  Speaker Pelosi also knew that the minority members were opposed to speech that symbolized there was any need to engage in still experimental medical procedures.  *Id.*  Therefore, Speaker Pelosi was well aware that her fiat would harm members of the minority party by forcing them to engage in this compelled symbolic speech and activity, or otherwise be prohibited from entering the House floor, but not any other areas of the House where the majority decided this symbolic speech was unnecessary.  *Id.*

---

[16] *See* https://www.nbcnews.com/politics/politics-news/house-ends-mask-mandate-fully-vaccinated-lawmakers-staff-n1270548 (last visited 7/23/2021); *see also* https://www.newsweek.com/34-gop-reps-ask-nancy-pelosi-lift-mask-rule-house-following-new-cdc-guidelines-1591401 (last visited 7/23/2021).

[17] *See*  https://www.salon.com/2021/06/16/marjorie-taylor-greene-refuses-to-say-whether-or-not-she-has-been-vaccinated-against-covid-19_partner/ (Published 6/16/2021; last visited 7/21/2021).
[18] *See* https://www.courier-journal.com/story/news/politics/elections/2020/10/22/u-s-rep-thomas-massie-says-he-wont-taking-covid-19-vaccine/3737134001/ (last visited 7/21/2021).

34.     Furthermore, Congressman Norman had already received the vaccine for COVID-19 when he appeared on the floor of the House in May without a mask, but this did not stop Defendants from issuing the fine notice and the imminent reduction in his compensation as a result. (Pl.'s Ver. Compl. ¶ 41).

35.     On the other hand, since Speaker Pelosi's fiat, numerous members of the majority party have failed to wear masks while on the floor of the House, and due to Defendants' selective enforcement and *ad-hoc* exceptions, none of them have been cited or fined. (Pl.'s Ver. Compl. ¶ 42). The following are photos of members of the majority party on the floor of the House without a mask, in violation of H. Res 38:

[19]

[20]

---

[19] https://www.c-span.org/video/?513011-1/house-votes-create-select-committee-investigate-jan-6-capitol-attack-222-190 (House Session from 6/30/2021; last visited 7/21/2021); https://www.c-span.org/video/?512812-2/house-session-part-1 (House Session from 6/24/2021; last visited 7/21/2021).

[20] https://www.c-span.org/video/?512812-2/house-session-part-1 (House Session from 6/24/2021; last visited 7/21/2021); https://www.c-span.org/video/?512810-2/house-session-part-1 (House Session from 6/22/2021; last visited 7/21/2021).

[21]

(Pl.'s Ver. Compl. ¶ 42).

36. None of these members of the majority party were fined despite their violations of H. Res 38 because Speaker Pelosi unilaterally decided, without amending H. Res 38, that if recognized to speak, they did not need to wear a mask. (Pl.'s Ver. Compl. ¶ 43). In short, H. Res. 8 and H. Res. 38 have been weaponized on a partisan basis to punish political opponents, based on their viewpoints, and all in an effort to force the minority party to conform to the majority's political views. *Id.*

37. On July 22, 2021, Plaintiff Massie received a *Deduction of Fine Imposed Pursuant to House Resolution 38* memorandum, which read in relevant part:

> The Office of Members' Services received correspondence on July 20, 2021, from the House Committee on Ethics upholding a fine imposed pursuant to House Resolution 38 and House Rule II, clause 3(g). The fine was imposed by the House Sergeant at Arms on May 19, 2021. The Chief Administrative Officer is responsible for deducting the amount of any fine levied under House Resolution 38 and House Rule II, clause 3(g) from the net salary otherwise due to the Member, Delegate, or Resident Commissioner. I am including a copy of the Committee on Ethics and Sergeant at Arms notices for your records.
>
> The full amount of the fine, **$500.00,** will be deducted from your July 2021 payroll (to be disbursed August 1). (**Exhibit A**)

---

[21] https://www.c-span.org/video/?512812-2/house-session-part-1 (House Session from 6/24/2021; last visited 7/21/2021); https://www.c-span.org/video/?512574-1/house-session (House Session from 6/17/2021; last visited 7/21/2021).

(Pl.'s Ver. Compl. ¶ 44).

38. The remaining Plaintiffs received correspondence materially similar to that in Exhibit A. (Pl.'s Ver. Compl. ¶ 45).

39. In other contexts, symbolic speech has been embraced on the House floor by members of the majority party, particularly where it does not disrupt the proceedings of the House, as the following images of members of the House reveal:



(Pl.'s Ver. Compl. ¶ 46).

40. Plaintiffs' activities, including their symbolic speech consisting of not wearing ineffective masks, have not violated either law, or good order within the House. (Pl.'s Ver. Compl. ¶ 47). Again, for the avoidance of all doubt, and as the video referenced above reveals, there was no disruption in proceedings of the House, and, at the time Plaintiffs proceeded to the House floor, there was no active business pending before the House nor were any debates occurring. *Id.*

41. Defendants, in selectively enforcing H. Res. 8 and H. Res. 38 against Plaintiffs in a viewpoint discriminatory manner, issued fine notices against Plaintiffs and, consequently, the

unconstitutional reduction and varying of Plaintiffs' compensation is imminent.[22]  (Pl.'s Ver. Compl. ¶ 48).

42. During the pendency of this matter, Plaintiffs had their compensation reduced through these fines, and the threat continues.

Dated: October 29, 2021

Respectfully Submitted,

/s/Christopher Wiest
Christopher Wiest (DCD KY002)
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
Tel: (513) 257-1895
chris@cwiestlaw.com

/s/ Aaron Siri
Aaron Siri (*pro hac*)
Elizabeth A. Brehm (*pro hac vice*)
Jessica Wallace (*pro hac vice*)
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
aaron@sirillp.com

/s/John R. Garza
John R. Garza
Bar ID: 398728
Garza Building
17 W. Jefferson Street, Suite 100
Rockville, Maryland 20850
Tel: (301) 340-8200 x 100
jgarza@garzanet.com

/s/Thomas Bruns
Thomas Bruns (*pro hac vice*)
Bruns, Connell, Vollmar, Armstrong LLC
4750 Ashwood Drive, Ste. 200
Cincinnati, Ohio 45241
Tel: (513) 312-9890
tbruns@bcvalaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the foregoing by filing same via the Court's CM/ECF system, this 29 day of October, 2021, which will serve same upon all Counsel of Record.

/s/Christopher Wiest

---

[22] Consistent with the foregoing, the rules for security screening have also been weaponized whereby Democrats have violated those rules without fines and Republican members who have violated them have been fined.  *See Clyde et al. v. Walker et al.*, Case 1:21-cv-01605-TJK.