# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS MASSIE, *et al.*,

                *Plaintiffs*,

      v.

NANCY PELOSI, *et al.*,

             *Defendants*.

Case No. 1:21-cv-02023-RBW

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

I.    The Speech Or Debate Clause Bars Plaintiffs' Suit............................................... 2

II.   Plaintiffs Fail To State A Claim............................................................................. 7

    A.   The Rule Does Not Violate The Twenty-Seventh Amendment ................................ 7

    B.   The Rule Does Not Violate Section 5 Of Article I Of The Constitution.................. 14

    C.   The Rule Does Not Violate Section 6 Or 7 Of Article I Of The Constitution.......... 17

    D.   The Rule Does Not Violate The First Amendment .................................................. 18

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009) ........................................................................................17

*Barker v. Conroy,*
   921 F.3d 1118 (D.C. Cir. 2019) ..........................................................................3, 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 570 (2007) ........................................................................................17

\*   *Boehner v. Anderson,*
   30 F.3d 156 (D.C. Cir. 1994) .............................................................................10, 12

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ....................................................................................................4

\*   *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n,*
   515 F.2d 1341 (D.C. Cir. 1975) ....................................................................2, 3, 4, 6

*Cressman v. Thompson,*
   719 F.3d 1139 (10th Cir. 2013) .........................................................................18, 19

*Dombrowski v. Eastland,*
   387 U.S. 82 (1967) ....................................................................................................5

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975) ..................................................................................................4

*Fields v. Off. of Eddie Bernice Johnson,*
   459 F.3d 1 (D.C. Cir. 2009) ......................................................................................6

\*   *Gravel v. United States,*
   408 U.S. 606 (1972) ..............................................................................................2, 6

*Humphrey v. Baker,*
   848 F.2d 211 (D.C. Cir. 1988) ..............................................................................9, 10

*In re Chapman,*
   166 U.S. 661 (1897) ................................................................................................15

*In re Grand Jury Subpoenas,*
   571 F.3d 1200 (D.C. Cir. 2009) ..............................................................................15

*Kilbourn v. Thompson,*
   103 U.S. 168 (1880) .........................................................................................5, 9, 10

\*   *McCarthy v. Pelosi*,
       5 F.4th 34 (D.C. Cir. 2021), *cert. pet. filed,* Sept. 9, 2021 (No. 21-395)..........................2, 5, 6

      *Mireles v. Waco*,
       502 U.S. 9 (1991)...............................................................................................................4

      *Powell v. McCormack*,
       395 U.S. 486 (1969).........................................................................................................5

      *Rangel v. Boehner*,
       20 F. Supp. 3d 148 (D.D.C. 2013) ................................................................................16

\*   *Rangel v. Boehner*,
       785 F.3d 19 (D.C. Cir. 2015) ....................................................................................4, 16

      *Walker v. Jones*,
       733 F.2d 923 (D.C. Cir. 1984) ...............................................................................3, 4, 6

\*   *Texas v. Johnson*,
       491 U.S. 397 (1989).......................................................................................................18

      *United States v. Ballin*,
       144 U.S. 1 (1892)............................................................................................................6

      *United States v. Brewster*,
       408 U.S. 501 (1972)......................................................................................................15

\*   *United States v. O'Brien*,
       391 U.S. 367 (1968).......................................................................................................18

**Constitution and Statutes**

U.S. Const., Art. I, § 5, cl. 2................................................................................................9

U.S. Const., Art. I, § 6, cl. 1.........................................................................................9, 17

U.S. Const., Art. I, § 7, cl. 2.........................................................................................9, 17

**Other Authorities**

2 Joseph Story, *Commentaries on the Constitution of the United States* § 835 (1833)................16

Black's Law Dictionary (6th ed. 1991).................................................................................15

Denise Lavoie, *Federal courts impose new COVID-19 restrictions amid surge*,
       Associated Press (Aug. 19, 2021), https://perma.cc/57GZ-S2GZ ...........................................15

GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment:*
       *Meaning and Application*, Harv. J. of L. & Pub. Pol'y, Sept. 2, 2021 ......................................10

Press Releases, Committee on Ethics, https://perma.cc/HJ7D-DG24 ............................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Andrew Clyde
    (Oct. 25, 2021), https://perma.cc/T7FQ-GGH2.........................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Andrew Clyde
    (Nov. 1, 2021), https://perma.cc/656Z-V3UN...........................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Andrew Clyde
    (Nov. 8, 2021), https://perma.cc/U29H-WHS7 .........................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Marjorie
    Taylor Greene (Sept. 8, 2021), https://perma.cc/6965-W78C ..................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Marjorie
    Taylor Greene (Oct. 25, 2021), https://perma.cc/86XA-3NPV ................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Marjorie
    Taylor Greene (Nov. 1, 2021), https://perma.cc/R8U7-NSYB ................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Marjorie
    Taylor Greene (Nov. 8, 2021), https://perma.cc/JN6S-JJ4U ...................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Thomas
    Massie (July 20, 2021), https://perma.cc/2QXV-5T4L ...........................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Brian Mast
    (June 25, 2021), https://perma.cc/N3MH-6Q4D ....................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Mary Miller
    (Sept. 28, 2021), https://perma.cc/AXC7-VDYG...................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
    Member of the Committee on Ethics Regarding Representative Mariannette
    Miller-Meeks (July 25, 2021), https://perma.cc/Q6TZ-ZV3T.................................13

iv

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
  Member of the Committee on Ethics Regarding Representative Ralph Norman
  (July 20, 2021), https://perma.cc/FXD4-AR5S ...................................................................13

Press Release, Committee on Ethics, Statement of the Chairman and Ranking
  Member of the Committee on Ethics Regarding Representative Chip Roy
  (Sept. 8, 2021), https://perma.cc/V4XX-SV39 ..................................................................13

Press Release, Transportation Security Administration, TSA extends face mask
  requirement through January 18, 2022 (Aug. 20, 2021),
  https://perma.cc/HR6W-PFP5 ............................................................................................14

Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the
  Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497 (1992) ...............................................11

Samuel Johnson, A Dictionary of the English Language (1785)...................................................15

The Documentary Record from the First Federal Congress
  (Helen E. Veit et al., eds., 1991)........................................................................................12

U.S. Dep't of Veterans Affairs, *Coronavirus FAQs: What Veterans need to know*,
  https://perma.cc/KZR8-QPXQ (last visited Nov. 16, 2021)..................................................14

## INTRODUCTION

Failing to offer any persuasive legal argument against dismissal of their suit, Plaintiffs resort to insinuating (Opp. 12) that House Resolution 38 is part of a scheme "to dissuade and punish Republican members of Congress from being able to speak or debate based on viewpoint." They are wrong, just as when they allege (Opp. 24) that the measure aims "to deprive Republican Members of their political independence and financial ability to serve."

The House resolution at issue is a straightforward measure aimed at protecting the health of *all* House Members, Officers, and House employees who serve on the House Floor during sessions—regardless of partisan affiliation—during the COVID-19 pandemic, which has already claimed the life of a Member and a Member-elect, and has sickened many others on Capitol Hill. Plaintiffs are free to disagree with this resolution and the policy behind it, and indeed they registered such disagreement when voting against it on the House Floor. They were outvoted. Plaintiffs' ability to speak and debate on the House Floor requires nothing more than wearing a simple face mask, as nearly every adult American and a great many children have done at some point during the COVID-19 pandemic, and as Plaintiffs must do whenever they, for example, fly home to their district.

Plaintiffs' suit is barred by the Speech or Debate Clause, which absolutely shields from judicial scrutiny the actions of Congressional officials who enforce a House rule that is integral to the legislative process. And for independent reasons, Plaintiffs' suit must be dismissed for failure to state a legally cognizable claim. Plaintiffs give novel readings to various constitutional provisions—the Twenty-Seventh Amendment, the Discipline Clause, the Ascertainment Clause, the Presentment Clause, and the First Amendment—that find no support in text, precedent, history, or logic.

Plaintiffs' complaint must be dismissed.

## I.      The Speech Or Debate Clause Bars Plaintiffs' Suit

As noted in Defendants' opening brief, the Speech or Debate Clause protects "all legislative acts," *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021), *cert. pet. filed,* Sept. 9, 2021 (No. 21-395) (internal quotation marks omitted)—*i.e.*, those that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Such acts "include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction of either House.'" *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625).

As further explained in our opening brief, the D.C. Circuit's decision in *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975), forecloses judicial intervention in this case. In *Consumers Union*, a publisher sued the Executive Committee of the Periodical Correspondents' Association and the Sergeants at Arms of both Houses of Congress, challenging the constitutionality of rules governing access to press galleries in each Chamber. *See id.* at 1342-46.

The D.C. Circuit held that, in excluding the plaintiff publisher from the press galleries, the defendants were "enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress and within the scope of authority appropriately delegated by it," and thus had engaged in "legislative" acts. *Id.* at 1350. Although not "the legislative process itself," *id.* at 1348, the "execution of internal rules" governing admittance to the press galleries overlooking the House Floor is "identified with"—and protects—"the legislative process," *id.* at 1351. Accordingly, the defendants' actions "were an integral part of [both] the legislative machinery" and the "'deliberative and communicative processes'" of Congress. *Id.* at 1350 (quoting *Gravel*, 408 U.S. at 625); *see also McCarthy*, 5 F.4th at 41 (noting that, in *Consumers*

*Union*, "the executing actions themselves constitute[d] legislative acts" and thus were shielded from judicial review).

Plaintiffs' efforts to distinguish *Consumers Union* fail.  *First*, Plaintiffs strangely note (Opp. 11) that the present case involves "constitutional limitations."  *Consumers Union* did as well: the plaintiff there alleged a denial of equal protection and due process, and asserted (as do Plaintiffs here) that the rule in question violated the First Amendment.  *See Consumers Union*, 515 F.2d at 1342.

 *Second*, Plaintiffs cite (Opp. 11-12) *Barker v. Conroy*¸ in which the D.C. Circuit noted that, in *Consumers Union*, "because the Association's denial of the organization's application involved 'regulation of the very atmosphere in which *lawmaking deliberations* occur,' the Speech or Debate Clause barred us from hearing the suit."  921 F.3d 1118, 1128 (D.C. Cir. 2019) (quoting *Walker v. Jones*, 733 F.2d 923, 930 (D.C. Cir. 1984)) (emphasis added in *Barker*).  But the rule in the present case similarly addresses—quite literally—the "very atmosphere" in which such deliberations occur, amidst reasonable concerns that Members might become infected by an airborne virus.  If the Speech or Debate Clause protects against challenges to regulations that govern access to the House *press galleries*, then it surely protects against challenges to regulations that govern access to the House *Floor*.

In the middle of a devastating pandemic that has killed over 760,000 Americans, the Speaker of the House, after consultation with the Attending Physician, decided to require protective masks in the Hall of the House—a decision similar to that made by numerous public and private entities (including the federal courts) since the pandemic began.  A majority of House Members subsequently concluded that a fine should be imposed upon any Member who did not abide by this requirement.  Plaintiffs may disagree with the wisdom or necessity of these

decisions, but that is no reason for this Court to interfere with the House's judgment as to what health measures are appropriate to protect Members in the Hall of the House.

The factual contrast between the present case and *Barker* is instructive.  In *Barker*, the D.C. Circuit rejected a Speech or Debate Clause defense to a lawsuit by an atheist whom the House Chaplain declined to invite to deliver a secular invocation.  *See Barker*, 921 F.3d at 1121. The court distinguished *Consumers Union* by noting that "any rules pertaining to the opening prayer—an event that occurs at the very beginning of the legislative session before any deliberating whatsoever—could not similarly be said to regulate 'the very atmosphere in which lawmaking deliberations occur.'"  921 F.3d at 1128 (quoting *Walker*, 733 F.2d at 930).  This distinction is decisive: whereas the opening prayer occurs before deliberations begin, the action that House Resolution 38 regulates—the use of precautionary measures in the House Chamber to reduce the risk of COVID-19 transmission—pervades the entirety of House deliberations.

*Third*, Plaintiffs suggest (Opp. 12 n.9) that this case is different from *Consumers Union* because the Defendants here, they claim, were not acting in "good faith."  Defendants vigorously deny any claim of bad faith.  Moreover, as a legal matter, an assertion of bad faith cannot serve to defeat a valid Speech or Debate Clause defense, because if it did, then plaintiffs would simply allege bad faith as a means of surmounting the Speech or Debate hurdle.  *See, e.g.*, *Bogan v. Scott-Harris,* 523 U.S. 44, 54 (1998) ("The privilege of absolute immunity would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader." (cleaned up)); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508–09 (1975) ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it."); *cf. Mireles v. Waco*, 502 U.S. 9, 11 (1991)

("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of

which ordinarily cannot be resolved without engaging in discovery and eventual trial.").

Plaintiffs miss the mark by claiming (Opp. 13) that "mask enforcement and payroll

deductions" are not protected by the Speech or Debate Clause.  The question is not whether these

activities *per se* are covered by the Speech or Debate Clause, but whether these functions are

protected to the extent that they are in furtherance of this specific House resolution.  The answer

is clearly yes.  As the D.C. Circuit recently wrote:

> The salient distinction under the Speech or Debate Clause is not between enacting
> legislation and executing it.  The pivotal distinction instead is between legislative
> acts and non-legislative acts.  So in *Consumers Union*, the Clause encompassed
> not just the promulgation of the rules governing seating in the press galleries, but
> also the administration and enforcement of those rules.

*McCarthy*, 5 F.4th at 41.  Plaintiffs here challenge Defendants' "administration and

enforcement" of House Resolution 38.  Their challenge is therefore foreclosed by the Speech or

Debate Clause.[1]

Plaintiffs point (Opp. 14-16) to three Supreme Court cases to support their opposing

position: *Kilbourn v. Thompson*, 103 U.S. 168 (1880), *Dombrowski v. Eastland*, 387 U.S. 82

(1967), and *Powell v. McCormack*, 395 U.S. 486 (1969).  But the Supreme Court's analysis of

those cases in *Gravel* provides no support for Plaintiffs' attempt to distinguish *Consumers

Union.*  As the D.C. Circuit recently recognized, these three rulings are "not to the contrary" of

the analysis in *Consumers Union,* because "[a]s the Supreme Court has explained in specific

reference to those three decisions, they 'do not hold that persons … are beyond the protection of

---

[1] The involvement of Defendant Walker is even more enmeshed in the legislative process
because the imposition of a fine by the Sergeant at Arms *precedes* one more legislative step: an
appeal to the House Committee on Ethics by the Member subject to the fine.

the Clause when they perform or aid in the performance of legislative acts.'"  *McCarthy*, 5 F.4th at 41 (quoting *Gravel*, 408 U.S. at 618).

*Fourth*, Plaintiffs cite (Opp. 17-18) two cases, *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006), and *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984), in which the D.C. Circuit declined to recognize Speech or Debate Clause immunity for Members sued for personnel actions.  But those cases are inapposite.  Unlike the instant case, those decisions involved personnel decisions far afield from core Speech or Debate Clause concerns.  Indeed, *Walker* expressly distinguished *Consumers Union*, which "involved, as Walker's discharge surely does not, regulation of the very atmosphere in which lawmaking deliberations occur." *Walker*, 733 F.2d at 930.  As noted above, *see supra* p. 3, the rule in this case quite literally regulates "the very atmosphere in which lawmaking deliberations occur," by reducing the spread of a pernicious airborne virus in the House Chamber.  *See Walker*, 733 F.2d at 930 (noting that in *Consumers Union* "the arrangements in question were intended to shield members of Congress").

*Finally*, Plaintiffs' reliance (Opp. 4-7) on *United States v. Ballin*, 144 U.S. 1 (1892)— which is not a Speech or Debate Clause case—is misplaced.  In *Consumers Union* itself, 515 F.2d at 1348 n.13, the losing plaintiff relied primarily on *Ballin*, yet the D.C. Circuit concluded that the Speech or Debate Clause barred the action, *id.* at 1348-51.  Even if *Ballin* did control this case, Plaintiffs would not prevail.  For reasons stated below and in our opening brief, the House did not "by its rules ignore constitutional restraints or violate fundamental rights."  *Ballin*, 144 U.S. at 5.  Nor can it be said that in this case there is no "reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained." *Id.* at 5.

Plaintiffs suggest (Opp. 6) that assessing fines and imposing "a mask mandate that only applies in the areas of the House covered by tv cameras and is only enforced against Members of the minority party" demonstrate the lack of fit between means and ends. This is incorrect for multiple reasons. First, Congress has long recognized, in both the criminal and civil contexts, that the threat of fines is a commonsense deterrent. Second, as discussed in Defendants' opening brief (Mot. 5-7), mask requirements have been in place for most House office spaces since the summer of 2020—not just in locations "covered by tv cameras." Only the penalty for violating such requirements applies exclusively to the Hall of the House, which is the sole location in which the House gathers, debates, and votes as a full body, and which was therefore an eminently reasonable focus for House efforts to secure masking compliance. Third, Plaintiffs' allegation (Opp. 6) that the rule is "only enforced against the Members of the minority party" appears to refer to the fact that the Speaker announced that masks in the Hall of the House would not be required for Members while addressing the House or for Members who are fully vaccinated. Compl. ¶¶ 33-43; Mot. 7 & n.15. Both announcements applied to all Members regardless of political party. (The latter guidance has since been reversed. *See* Mot. 7 n.15.) That only Members of the minority party have received fines speaks to the conduct of those individual Members, not the aims of the resolution.

## II.   Plaintiffs Fail To State A Claim

Even if the Speech or Debate Clause does not deprive the Court of jurisdiction, this action should be dismissed for the independent reason that the complaint fails to state a claim.

### A.   The Rule Does Not Violate The Twenty-Seventh Amendment

#### 1.   *The Plain Language Of The Twenty-Seventh Amendment Does Not Cover House Resolution 38*

By its plain text, the Twenty-Seventh Amendment does not apply to House Resolution 38 for two reasons: (1) the fines at issue do not vary Member "compensation"; and (2) House Resolution 38 is not a "law" within the meaning of that amendment.

*First*, House Resolution 38 does not vary Member "compensation" within the meaning of the Twenty-Seventh Amendment.  A fine imposed pursuant to House Resolution 38 affects Member salary only conditionally and indirectly based on the Member's own behavior; it does not change Member "compensation" for the Member's "services."

As explained in our opening brief, "compensation" has long been understood to mean salary or wages as payment for services, and House Resolution 38—which imposes a fine (a penalty)—does not change Member salary.  Critically, Plaintiffs do not respond *at all* to our arguments (Mot. 16-17) regarding the plain and historical meaning of "fine," "compensation," and "services."  Indeed, Plaintiffs concede (Opp. 30) the dispositive fact that the fines do "not change the underlying salary level" of House Members.  Nonetheless, they argue that it "defies logic (and math) to suggest that deducting money" does not vary compensation.  But, by its ordinary meaning, compensation is not take-home pay, it is salary.  *See* Mot. 16-17.  Money is regularly deducted from House Members' paychecks for various reasons (*e.g.*, Social Security and Medicare taxes), and no one would suggest that such deductions reduce their *compensation*. *See* Mot. 9.  It is thus Plaintiffs' position that defies logic.

As noted in our opening brief, Defendants' position accords with how these terms are used in everyday life.  If a professional athlete earns $10 million per year, but receives a $50,000 fine for violating a team or league rule, we do not say that his "compensation" has been reduced to $9,950,000.  His compensation for his services remains the same; his punishment for an infraction, which was wholly separate from the services for which he was compensated, is another matter entirely.

Indeed, Plaintiffs' novel reading of "compensation" would conflict with other provisions of the Constitution.  As Plaintiffs note (Opp. 35-36), the phrase "compensation" also appears in the Ascertainment Clause, which provides that "The Senators and Representatives shall receive a

Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1.[2]  As Plaintiffs further note (Opp. 36), the D.C. Circuit has recognized that the phrase "ascertained by Law" refers to laws enacted through the process of bicameralism and presentment.  *See Humphrey v. Baker*, 848 F.2d 211, 214-15 (D.C. Cir. 1988).

Thus, *if* Plaintiffs are correct that a fine reduces "compensation," as that term is used in the Constitution, then the Ascertainment Clause would prevent the assessment of any fine without a statute approved by both the House and the Senate, followed by presentment to the President. Indeed, Plaintiffs argue as much (Opp. 36) in support of their claim that the fines violate the Ascertainment Clause and the Presentment Clause.  However, this argument runs headlong into the Discipline Clause, which provides that "*[e]ach House* may … punish its Members for disorderly Behaviour … ." U.S. Const., Art. I, § 5, cl. 2 (emphasis added); *see also Kilbourn*, 103 U.S. at 189-90 ("[T]he Constitution expressly empowers *each House* to punish its own members for disorderly behavior," even including "imprisonment … for refusal to obey some rule on that subject made by the House for the preservation of order.") (emphasis added).  Thus, because the Discipline Clause allows fines to be imposed by each house acting alone, whereas *the Ascertainment Clause requires "compensation" to be determined by both houses*, such fines cannot be considered to affect Members' "compensation" without rendering irreconcilable the Discipline Clause and the Ascertainment Clause.  The most logical way to give effect to both clauses is to read "compensation" as unaffected by disciplinary fines.  An alternative way to reconcile the clauses would be to hold that the House may *never* impose a disciplinary fine, which would contravene longstanding and uncontested practice.  Indeed, it would be odd for Congress to be able to

_____

[2] Plaintiffs do not suggest that the word "compensation" in the Twenty-Seventh Amendment carries a different meaning than the same word, applying to the same people, in the Ascertainment Clause.  Rather, they emphasize (Opp. 22) that the same concerns animated the drafting of both provisions.

imprison a Member, *see Kilbourn*, 103 U.S. at 189-90, but not to impose instead the lesser penalty of a fine.

*Second*, House Resolution 38 is not a "law" within the meaning of the Twenty-Seventh Amendment.  Plaintiffs point to other contexts in which the term "law" has been interpreted broadly (Opp. 27-28), but they fail to show that "law" has that same meaning in the context of the Twenty-Seventh Amendment.  As the D.C. Circuit has held, the term "law" in the Twenty-Seventh Amendment means a statute passed through bicameralism and presentment:  in *Boehner v. Anderson*, the D.C. Circuit explained that the Ethics Reform Act "became a law" within the meaning of the Twenty-Seventh Amendment on November 30, 1989, "when, the bill having passed both Houses and been presented to President Bush, he signed it into law."  30 F.3d 156, 161 (D.C. Cir. 1994); *see* Mot. 18-19.

Plaintiffs contend (Opp. 26) that *Boehner* "did not even purport to pose the question of what governmental actions constituted a 'law' under the Amendment."  But the question in that case was whether each cost-of-living adjustment violated the Twenty-Seventh Amendment, and the plaintiff there argued that each adjustment was "in effect a new law."  *Boehner*, 30 F.3d at 161.  To answer that question the D.C. Circuit had to decide what constituted the relevant "law" for purposes of the Amendment, and it held that "law" in the Twenty-Seventh Amendment has the same meaning as "law" in Article I, Section 7, Clause 2 of the Constitution—a law passed by both Houses and signed by the President.  *See id.* at 161.  Plaintiffs do not explain how their understanding of "law" can be consistent with the understanding of the D.C. Circuit in *Boehner*.

Plaintiffs have no convincing response to the argument that "law" must be given the same meaning in the Twenty-Seventh Amendment as in the related Ascertainment Clause, which undisputedly refers to laws enacted through the process of bicameralism and presentment.  *See* Mot. 19-20 (citing *Humphrey*, 848 F.2d at 215); GianCarlo Canaparo & Paul J. Larkin, Jr., *The*

*Twenty-Seventh Amendment: Meaning and Application*, Harv. J. of L. & Pub. Pol'y, (Sept. 2, 2021), at 9-11.  Instead, Plaintiffs suggest in a footnote that the Ascertainment Clause, by capitalizing "law" where the Twenty-Seventh Amendment does not, "refers expressly to the passage of a statute."  Opp. 35 n.28.  Plaintiffs offer no support for this assertion, nor do they note that "law" is one of dozens of nouns that are capitalized wherever they appear in the original Constitution, but are never capitalized in the amendments.[3]

While Plaintiffs are correct that the term "law" in the First Amendment has a far broader sweep than in the Ascertainment Clause, the question in this case is what "law" means in the Twenty-Seventh Amendment.  Plaintiffs agree with Defendants, and with the historical record, that the Twenty-Seventh Amendment emerged from debates over the Ascertainment Clause.  *See* Opp. 22-25; Mot. 15; Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497, 502 (1992).  Accordingly, there is substantial reason to conclude that "law" in the Twenty-Seventh Amendment carries the narrower meaning contemplated in Article I, and zero reason to infer the opposite from the difference in capitalization.

---

[3] Other such nouns include account, affirmation, age, aid, appointments, authority, ballot, branch, case, cases, census, certificates, choice, citizens, claim, claims, comfort, compensation, consent, conventions, crime, danger, death, debts, department, departments, disability, duties, effect, election, enemies, equity, executive, fact, forces, immunities, importation, inability, indictment, inhabitant, jurisdiction, land, laws, legislation, legislatures, life, majority, manner, member, members, numbers, oath, obligation, office, officer, officers, party, payment, peace, people, persons, place, power, powers, presence, privileges, property, proportion, punishment, purpose, purposes, qualifications, ratification, rebellion, representation, resignation, right, rules, seat, service, services, session, speech, tax, taxes, term, trial, use, value, vote, votes, witnesses, writs, year, and years.

2.   *The Twenty-Seventh Amendment's History And Purpose Confirm That House Resolution 38 Does Not Violate The Amendment*

The D.C. Circuit has already recognized that, "[a]ccording to Madison, and to all the ratifying states that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase 'cannot be for the particular benefit of those who are concerned with determining the value of the service.'"  *Boehner*, 30 F.3d at 159 (quoting James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in Creating the Bill of Rights: The Documentary Record from the First Federal Congress* 84 (Helen E. Veit et al., eds., 1991)).  In other words, the Twenty-Seventh Amendment was enacted to address seeming and actual impropriety that may exist when a group of individuals sets its own pay.  As explained in our opening brief (Mot. 21), there is no impropriety—seeming or actual—in fining an individual who defies a House rule.

Plaintiffs' brief goes on at length (Opp. 18-25) about the history of the Twenty-Seventh Amendment, apparently to highlight a different (less "commonly thought of") purpose of the Amendment involving *reductions* in salary.  At most, Plaintiffs' history shows (Opp. 20, 24) that the Twenty-Seventh Amendment may have been driven in part by concerns that reductions in pay—perhaps enacted to gain popularity with constituents—could "exclude those of modest means from public service."  That concern is not implicated here.  The fine at issue is deducted from a Member's paycheck only if the Member fails to follow a rule of conduct adopted by the entire House.  Members are not being excluded from office by a $500 fine ($2,500 upon subsequent offense) that may never be imposed; and *no one* is affected if they simply follow the rule (as nearly all Members do).

Even taking as correct Plaintiffs' proposed formulation—that the Amendment was intended to prevent Congressional salaries from being decreased to threaten the integrity and

12

independence of Members (Opp. 20)—that purpose has no relevance here.  Nothing about fining

an individual House Member who refuses to follow a House rule of conduct threatens the

integrity or independence of House Members; to the contrary, it ensures that House Members

comply with a rule that allows the House to function more safely.

Thus, Plaintiffs get nowhere with their conspiratorial insinuation (Opp. 24) that "what

underlie[s] this case" is "[t]he manipulation of salary by the House Democratic Majority to

deprive Republican Members of their political independence and financial ability to serve."  Not

only is this impossible given the mechanics of the rule, but it is demonstrably false.  205 of the

213 Republican Members—over 96%—have managed to avoid having fines imposed and upheld

against them under House Resolution 38.[4]

---

[4] *See* Press Releases, Committee on Ethics, *available at* https://perma.cc/HJ7D-DG24,
which lists, *inter alia*, all Members against whom fines have been imposed and upheld under
House Resolution 38.  In addition to the three Plaintiffs, fines have been imposed and upheld
against five other Republican Members.  *See* Press Release, Committee on Ethics, Statement of
the Chairman and Ranking Member of the Committee on Ethics Regarding Representative
Andrew Clyde (Oct. 25, 2021), https://perma.cc/T7FQ-GGH2; Press Release, Committee on
Ethics, Statement of the Chairman and Ranking Member of the Committee on Ethics Regarding
Representative Andrew Clyde (Nov. 1, 2021), https://perma.cc/656Z-V3UN; Press Release,
Committee on Ethics, Statement of the Chairman and Ranking Member of the Committee on
Ethics Regarding Representative Andrew Clyde (Nov. 8, 2021), https://perma.cc/U29H-WHS7;
Press Release, Committee on Ethics, Statement of the Chairman and Ranking Member of the
Committee on Ethics Regarding Representative Brian Mast (June 25, 2021),
https://perma.cc/N3MH-6Q4D; Press Release, Committee on Ethics, Statement of the Chairman
and Ranking Member of the Committee on Ethics Regarding Representative Mary Miller (Sept.
28, 2021), https://perma.cc/AXC7-VDYG; Press Release, Committee on Ethics, Statement of the
Chairman and Ranking Member of the Committee on Ethics Regarding Representative
Mariannette Miller-Meeks (July 25, 2021), https://perma.cc/Q6TZ-ZV3T; Press Release,
Committee on Ethics, Statement of the Chairman and Ranking Member of the Committee on
Ethics Regarding Representative Chip Roy (Sept. 8, 2021), https://perma.cc/V4XX-SV39.

### 3.   *A Contrary Reading Would Distort The Twenty-Seventh Amendment By Sweeping In Other Statutes And Rules*

Plaintiffs do not dispute (Opp. 31) that their understanding of the Twenty-Seventh Amendment would likely mean that other statutes and rules, such as 2 U.S.C. § 4523, are likewise unconstitutional.  Plaintiffs simply respond (Opp. 31) that those statutes are "not at issue here" and that "ratification of a constitutional amendment necessarily invalidates prior laws that violate the amendment's strictures."  They likewise (Opp. 31 n.23) "take no position" on salary deductions for absences, restitutionary fines, or individual court-ordered garnishments "as such circumstances may be governed by considerations not relevant to this case"; and they say that "voluntary deductions" are not "impinged by this action."  But Plaintiffs cannot avoid the logical consequences of their position and they fail to explain why their theory would not apply to such deductions.  Indeed, their broad reading of "law" in the Twenty-Seventh Amendment, which goes far beyond legislation enacted via bicameralism and presentment, would necessarily include, for example, changes in federal income tax withholding by the Internal Revenue Service.  The Court should reject Plaintiffs' invitation to read the Twenty-Seventh Amendment in a way that would call into question manifold other statutes, rules, and deductions, especially when that reading is not supported by the Amendment's plain language or history.

### B.   **The Rule Does Not Violate Section 5 Of Article I Of The Constitution**

Plaintiffs continue to argue that willfully disobeying a requirement to wear a mask in the Hall of the House is not "disorderly behavior" and thus is beyond the scope of the Discipline Clause.  Their argument would surely come as a surprise to millions of Americans who abide by mask requirements when (for example) traveling by public transit or airplane, or visiting patients

14

in veterans hospitals, or attending proceedings in federal courthouses, and who would risk denial

of entry, or removal, and possible penalties under federal law, if they failed to comply.[5]

Plaintiffs inexplicably claim (Opp. 32) that it is "circular logic" to define "disorderly" as

"conduct that is 'contrary to rules'" even though that definition is part of the very definition of

"disorderly" that they cite in their Complaint.  *See* Mot. 23; Compl. ¶ 56 & n.25.  In fact, both of

the additional dictionaries that Plaintiffs now proffer (Opp. 33-34 & n.24) include definitions

contradicting their position.  *See* Samuel Johnson, A Dictionary of the English Language (1785)

(defining "disorderly" to include "contrary to law"); Black's Law Dictionary (6th ed. 1991)

(defining "disorderly" to include "[c]ontrary to the rules of good order and behavior").

This is not "circular logic," in which the reasoner begins with what he or she is trying to

end with.  Plaintiffs' real objection is that they think the definition is too broad—because it

includes their behavior.  But the Discipline Clause is famously broad, providing "expansive

authority for each House to discipline and sanction its Members for improper behavior."  *In re

Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

Indeed, the Supreme Court has noted that each chamber's discretion in disciplining its

members is "almost unbridled" and "there is no established right to review" of such a decision.

*United States v. Brewster*, 408 U.S. 501, 519 (1972).  The Discipline Clause's "right to expel

extends to all cases where the offense is such as in the judgment of the [House or S]enate is

inconsistent with the trust and duty of a member."  *In re Chapman*, 166 U.S. 661, 669 (1897).

---

[5] *See* Press Release, Transportation Security Administration, TSA extends face mask requirement through January 18, 2022 (Aug. 20, 2021), https://perma.cc/HR6W-PFP5; U.S. Dep't of Veterans Affairs, *Coronavirus FAQs: What Veterans need to know* ("Everyone who enters our hospitals, clinics, and Vet Centers must wear a mask that covers their mouth and nose. If you're fully vaccinated, our staff will tell you if it's safe to remove your mask during your visit."), https://perma.cc/KZR8-QPXQ (last visited Nov. 16, 2021); Denise Lavoie, *Federal courts impose new COVID-19 restrictions amid surge*, Associated Press (Aug. 19, 2021), https://perma.cc/57GZ-S2GZ.

As Justice Story wrote regarding the Rulemaking and Disciplinary Clauses:  "No person can doubt the propriety of the provision authorizing each house to determine the rules of its own proceedings. … But the power to make rules would be nugatory, unless it was coupled with a power to punish for disorderly behaviour, or disobedience to those rules."  2 Joseph Story, *Commentaries on the Constitution of the United States* § 835 (1833).

Imposing a fine for violating a House rule that imposes a minimal burden on Members to protect the health of Members and House Floor staff, and the ability to deliberate in the House Chamber in the midst of a pandemic, is thus well within the heartland of the Discipline Clause.

Plaintiffs misconstrue (Opp. 32-33) Judge Bates' opinion in *Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd on other grounds*, 785 F.3d 19 (D.C. Cir. 2015).  As Plaintiffs correctly note, this Court wrote that "to determine whether the alleged conduct here is beyond the authority of this Court, it is necessary to determine whether members of the House have acted outside of the zone of their discretion under the Discipline Clause."  20 F. Supp. 3d at 171. But, as the Court continued, the House's discretion under the Discipline Clause "is broad and constrained only by *other* constitutional limits: determining whether the House has acted within its discretion, then, is by nature congruent with determining whether the House has violated *another* provision of the Constitution in the course of disciplining a Member."  *Id.* at 172 (emphases added).  Unlike in the Court's hypothetical of "the House locking a Member in the basement of the Capitol for one year based only on an internal disciplinary vote," *id.* at 171, Plaintiffs here, like the plaintiff in *Rangel*, have "not identified any constitutional provision expressly limiting the House's discretion to discipline" them, *id.* at 173.

Perhaps recognizing the weakness of their legal arguments, Plaintiffs wrongly state (Opp. 35) that, "at the current stage of pleading, the plausibility of Plaintiffs' position is all that is required to deny Defendants' Motion to Dismiss on this ground."  Plaintiffs conflate *factual*

plausibility with *legal* plausibility.  To survive a motion to dismiss under Rule 12(b)(6), a

plaintiff must have pleaded "enough *facts* to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  But all the factual content in the world cannot save a claim that is legally

unsupported.  *See id.* ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions … .  Although for the purposes of a motion to

dismiss we must take all of the factual allegations in the complaint as true, we are not bound to

accept as true a legal conclusion couched as a factual allegation." (internal quotation marks

omitted)).

### C.      The Rule Does Not Violate Section 6 Or 7 Of Article I Of The Constitution

Plaintiffs' argument (Opp. 35-36) that their fines violate the Ascertainment Clause[6] and

the Presentment Clause[7] fails because, as discussed elsewhere (Mot. 16-17, 24-25; *see supra* pp.

7-10), the fines do not reduce Plaintiffs' "compensation."  Plaintiffs fare no better with their

argument that their fines are unconstitutional because they were not assessed by "Congress

itself."  Defendants are unaware of *any* fine that "Congress itself" has ever assessed upon a

Member; Plaintiffs' argument would invalidate every fine that has ever been issued by either the

House or the Senate independently.  As discussed above, *see supra* pp. 9-10, the Constitution

plainly does not require this.

---

[6] "The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1.

[7] The Presentment Clause provides that legislation must be presented to the President for his approval or disapproval in order to become a law.  U.S. Const., Art. I, § 7, cl. 2.

### D.       The Rule Does Not Violate The First Amendment

Plaintiffs make little effort to rebut Defendants' arguments for dismissal of Plaintiffs' First Amendment claim, instead copying and pasting (without citation) numerous paragraphs of the majority opinion in *Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013), a challenge to an Oklahoma statute forbidding the covering of an image on state license plates.  For the reasons stated in Defendants' opening brief (Mot. 25-30), Plaintiffs' First Amendment claim fails.

With regard to Plaintiffs' argument (Opp. 36-42) that they were unconstitutionally punished for engaging in symbolic speech, they assert (Opp. 41) that their appearance in the Hall of the House without masks had "communicative intent" and "was clearly understood as a protest."  But this—assuming *arguendo* its accuracy—is not enough.  A court must next ask "whether [the government] has asserted an interest in support of [the punishment of Plaintiffs] that is unrelated to the suppression of expression."  *Texas v. Johnson*, 491 U.S. 397, 407 (1989). If the answer is yes—as it plainly is here, where Defendants' asserted interest is in combating the spread of COVID-19—then the "relatively lenient," *id.*, standard of *United States v. O'Brien*, 391 U.S. 367 (1968), applies.  Under that standard,

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.  For the reasons stated in Defendants' opening brief (Mot. 28-29), the rule easily meets all four *O'Brien* requirements.[8]  Plaintiffs essentially argue that the First

---

[8] Plaintiffs allege parenthetically (Opp. 41) that "the mandate was only applicable in the Hall of the House, suggesting it was meant not for public health purposes, but to convey a message in the first instance."  This is both irrelevant and—as noted above, *see supra* p. 7—incorrect.

Amendment allows them to exempt themselves from any rule by making clear that their disobedience constitutes a protest.  That is not the law—that would be anarchy.

The compelled speech section of Plaintiffs' brief (Opp. 42-44) consists of five paragraphs copied verbatim from the majority opinion in *Cressman*, 719 F.3d at 1151-52.  Plaintiffs make no effort to rebut or even acknowledge Defendants' arguments (Mot. 26-27), and that failure is fatal to Plaintiffs' claim.

Finally, Plaintiffs' viewpoint discrimination claim (Opp. 44-45) founders for the simple reason that, as discussed above and in Defendants' opening brief, Plaintiffs' failure to wear a mask is not First Amendment-protected speech.  A rule cannot constitute viewpoint discrimination if the conduct proscribed by the rule is not, in the relevant context, a First Amendment issue.

## CONCLUSION

For the foregoing reasons, and for the reasons discussed in Defendants' opening brief, the complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492)
*General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
Eric R. Columbus (D.C. Bar No. 487736)
Stacie M. Fahsel (D.C. Bar. No. 1034314)
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants Nancy Pelosi, William J.*
*Walker, and Catherine Szpindor*

November 16, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2021, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.


*/s/ Douglas N. Letter*
Douglas N. Letter